## Emma Passwaters, Administratrix, Appellee, v. Lake Erie & Western Railroad Company, Appellant.

1. RAILROADS—*speed of trains.* In the country, a railroad may run its trains at any speed thought proper, consistent with the safety of travelers who are attempting to cross the highway crossings in the exercise of due care, and with the safety of its passengers and employees.

2. RAILROADS—*what instruction as to speed of train and warnings given is proper.* It is not error to instruct, in an action against a railroad company for wrongful death, that even if the jury believe from the evidence that the whistle was blown and the bell rung for the crossing in question, yet if they believe that defendant's servants were negligently running the train at such a dangerous speed as to render the warnings unavailable, and that by reason thereof such warnings were not a reasonable warning of the approach of the train, and that deceased was struck and killed by defendant's train by reason of such negligence, then verdict should be given for plaintiff, if they believe deceased was in the exercise of due care.

3. RAILROADS—*speed at highway crossing.* The speed of a train at a highway crossing should not be so great as to render the warning by bell or whistle unavailing.

4. RAILROADS—*management of trains at crossings.* The common law imposes a duty on railroads to use reasonable care in the management of trains approaching dangerous crossings in addition to the statutory duty.

Appeal from the Circuit Court of McLean county; the HON. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed April 18, 1913. Rehearing denied May 16, 1913.

JOHN E. POLLOCK and W. B. LEACH, for appellant; JOHN B. COCHRAN, of counsel.

SCHNEIDER & SCHNEIDER and BARRY & MORRISSEY, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

Emma Passwaters, as administratrix of the estate of Charles A. Passwaters, deceased, brought suit against the Lake Erie & Western Railroad Company, charging said railroad company with negligence in the running and management of a train by means whereof Charles A. Passwaters, while attempting on a public highway to drive across the track of the defendant was struck by the train and killed. There was a verdict and judgment for $5,000 in favor of plaintiff, and the defendant appeals.

The declaration contains eleven counts averring in different forms that the defendant was guilty of negligence in failing to give the statutory signals required when a train approaches a highway crossing; and in running its train at a high and dangerous rate of speed across a public highway.

The evidence shows that the accident occurred a mile and a half west of Holder in McLean county. The railroad runs practically east and west and the public highway crosses it at right angles. The highway north of the railroad is lower than the railroad. The railroad west of the highway runs through a cut about ten feet deep through a knoll, the crest of which is north of the railroad and west of the highway. The cut ends about at the highway and is not deep enough to conceal a train, although the knoll a short distance north of the railroad prevents travelers on the highway a few rods north of the railroad from seeing the train until it gets near the highway. At the north line of the right of way and the west side of the high-

way the surface of the ground is about eight feet above the traveled road.

On the west side of the highway and north of the railroad right of way was a hedge fifteen feet high, but it had been trimmed so that it was about five feet high for a few feet north from the right of way which extends 32 feet north of the center of the track. The knoll and the hedge would obstruct the view of any person approaching the crossing from the north until they got within about thirty-five feet of the track. On the day of the accident the deceased, who had been to Bloomington with his daughter, drove south towards the railroad in a buggy drawn by a pair of mules a little after two o'clock in the afternoon. The top of the buggy was down. About half a mile north of the crossing he stopped and talked with some men working the road; after he left the road graders, he passed the house of Frank Hall, a quarter of a mile from the track. Hall saw him, while driving at a trot, look at his watch and heard him say something to his daughter about the train. The foreman of the grading gang heard the rumble of the train, and looked toward the crossing just as the deceased drove on the track and was struck by the train. Wesley James, who lives half a mile south of the railroad, while looking out of a window in his kitchen, saw and watched the deceased driving along the highway for a quarter of a mile and saw him drive upon the track. The engineer, sitting on the right hand side of the cab of the engine looking ahead down the track, felt the engine strike something and saw a mule's head over the pilot; he stopped the train, which ran upwards of half a mile past the crossing, before it could be brought to a stand. The fireman at the time of the accident was in the coal pit breaking coal. Passwaters and his little girl, both dead, were found seventy or eighty feet east of the crossing.

On the question of whether the bell was rung or the

whistle blown as required by the statute the evidence is very conflicting.

The train was three or four minutes behind time and was running at from 55 to 60 miles an hour.

It is contended on behalf of appellant that the deceased was not in the exercise of due care. The crossing is shown by the evidence to be a very dangerous one for a traveler coming from the north. A train coming from the west could not be seen because of the hedge and the knoll, until the traveler was thirty-five feet from the track and then only for a short distance along the track toward the west. Appellant's counsel state that thirty-two feet from the crossing a traveler could see two hundred to two hundred and fifty feet when looking west, and a little less than twenty-one feet he could see beyond the whistling post. A train traveling sixty miles an hour goes at the rate of eighty-six feet per second. When the train was two-hundred and fifty feet distant it could not be seen by a traveler on the highway thirty-five feet from the crossing and if a traveler at that distance from the crossing should then look and listen he might neither hear nor see it, and yet in less than three seconds it might be on the crossing. There is no law in this state limiting the rate at which a train may run in the country, and a railroad may run its trains at any speed thought proper consistent with the safety of travelers, who are attempting to cross the highway crossing in the exercise of due care for their own safety, and with the safety of its passengers and employees. *Partlow v. Illinois Cent. R. Co.,* 150 Ill. 321. Wesley James and the foreman of the grading gang, although half a mile distant, saw the deceased drive on the track. The evidence does not show either that the deceased looked and listened or that he failed to look and listen before driving on the track. It is manifest that the witnesses, who saw him, one being a half a mile behind him, and the other half a mile in front of him,

could not see what he did, and a failure to look and listen is not necessarily such contributory negligence as will preclude a recovery, *Dukeman* v. *Cleveland, C., C. & St. L. R. Co.,* 237 Ill. 104. The evidence shows that the deceased was a sober and industrious man 35 years of age, but on appellant's objection, appellee was not permitted to prove his habits with reference to care and prudence. We are of the opinion that the questions of whether the appellant gave the required statutory signal, and whether it was guilty of negligence in running its train at such a rate of speed over a crossing that was specially dangerous to travelers on the highway coming from the north, and whether the deceased was in the exercise of due care were all questions peculiarly for a jury to decide on a consideration of all the evidence. We are not able to say that the verdict is manifestly against the evidence.

It is insisted that the court erred in giving the following instructon: "Even if you should believe from the evidence that the whistle was blown and the bell rung for the crossing in question, yet, if you should further believe from the evidence that the defendant's servants at the time in question, were carelessly and negligently running the train at such a high and dangerous rate of speed as to render the blowing of the whistle and the ringing of the bell unavailable, and that by reason thereof, the ringing of the bell and the sounding of the whistle was not a reasonable warning of the approach of the train under all the facts and circumstances in evidence, and that the plaintiff's intestate was struck and killed by the defendant's train by reason of the negligence aforesaid, if you believe from the evidence there was negligence on the part of the defendant, in that regard, then your verdict should be for the plaintiff providing you further believe from the evidence that the deceased was in the exercise of ordinary care for his own safety while approaching and going upon the crossing."

The contention of appellant is that this instruction requires the giving of signals other than statutory signals and leaves it to the jury to say what other signals should be given. The instruction does not either directly or by inference refer to other signals than the statutory ones. It simply tells the jury that plaintiff is entitled to recover if they believe from the evidence that the train was negligently run at such a high and dangerous rate that the ringing of the bell and the blowing of the whistle was not a reasonable warning of the approach of the train. The speed of a train at a highway crossing should not be so great as to render the warning by bell or whistle unavailing. *Chicago, B. & Q. R. Co.* v. *Lee,* 87 Ill. 454.

Complaint is made of appellee's second and third given instructions on the ground that there was no evidence on which to base them. The second is concerning the running of trains over crossings at a high and dangerous rate of speed; the third concerns the statutory signals at highway crossings. Both instructions are made applicable to the case and require the jury to find certain things from the evidence.

Appellant also insists that there was error in refusing instructions requested by it. The principles of law of many of the instructions refused were fully recited in the eighteen given for appellant. The eleventh instruction was an abstract instruction and did not refer in any way to the evidence in the case. It was argumentative and properly refused for that reason. It also told the jury that if a bell weighing thirty pounds was rung or a whistle blown for eighty rods before reaching the crossing the company was without blame so far as giving signals are concerned. In addition to the statutory duty of railroads the common law imposes a duty on railroads to use reasonable care in the management of trains approaching dangerous crossings. *Illinois Cent. R. C.* v. *Ebert,* 74 Ill. 399; *Elgin, J. & E. Ry. Co.* v. *Lawlor,* 229 Ill. 624; *Chicago,*

*B. & Q. R. Co.* v. *Perkins*, 125 Ill. 127. The thirteenth refused was given in appellant's sixteenth instruction.

The jury were fully instructed on every question of law in the case. Finding no error of law, and the facts in the case being peculiarly within the province of a jury and the verdict not being manifestly against the evidence, the judgment is affirmed.

*Affirmed.*