### James P. O'Connell, Administrator, Appellee, v. Yellow Cab Company, Appellant.

### Gen. No. 25,483.

1. AUTOMOBILES AND GARAGES—*when evidence sufficient to warrant finding of negligent operation.* In an action for the death of a child struck by defendant's taxicab while in the street, evidence as to the speed of the taxicab and the place where the child was struck, *held* to warrant the jury in finding that defendant was negligent.

2. AUTOMOBILES AND GARAGES—*injury to infant on crosswalk as negligence.* If a boy 6 years and 5 months old was on the crosswalk when defendant's taxicab struck him, defendant was chargeable with negligence.

3. AUTOMOBILES AND GARAGES—*speed in thickly-settled district as negligence.* Though a boy ran upon the street at a point between crossings, if defendant's taxicab which struck him was going at a speed of over 20 miles an hour in a thickly-settled district, defendant would be chargeable with negligence.

4. NEGLIGENCE—*when infant cannot be charged with.* A child 6 years and 5 months old cannot legally be charged with negligence.

5. AUTOMOBILES AND GARAGES—*when parents' care question for jury in action for death of infant.* In an action for the death of a boy 6 years and 5 months old by being struck by defendant's taxicab, where the evidence showed that the boy's father was at work; that the mother left the boy downstairs with a dollar bill and a note in his hand and told him to wait until she got ready to go out; that she went upstairs for a few minutes and called him as

soon as she came down; and that almost immediately she saw a crowd gathering in the street and learned that he had been struck, the question of sufficiency of care on the part of the mother was for the jury, and it was fully warranted in finding that the parents exercised that degree of care which the law requires.

6. DEATH—*when evidence of parent's acts and statements before the injury admissible in action for death of infant.* In an action for the death of a boy 6 years and 5 months old, testimony given by the mother as to what she did and what she said to the boy shortly before the accident is admissible, upon the question of her due care, on the ground of necessity and as an exception to the hearsay rule.

7. INSTRUCTIONS—*when instruction as to negligence in proper form in action for infant's death.* In an action for the death of a child, an instruction that if the jury should find that the child was under 7 years of age then the child could not be charged with negligence, was not erroneous in not having the word "contributory" before the word "negligence."

8. DEATH—*when declaration failing to allege bringing of action within year not defective.* A declaration for negligent death which does not in specific terms state that the action was brought within one year is not defective where the date of the accident is alleged and the record shows that it was filed less than 5 months thereafter.

Appeal from the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Affirmed. Opinion filed October 5, 1921.

D'ANCONA & PFLAUM, for appellant.

RICE, LOWES & O'NEIL, for appellee; ELBRIDGE W. RICE, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a judgment in the sum of $2,750, obtained by the plaintiff, for running over his child with a yellow taxicab and killing him.

It is the theory of the plaintiff that on May 30, 1918, at about 2:30 p. m., his son—the plaintiff's testate—

James H. O'Connell, a boy about 6 years and 5 months old, while crossing Western avenue at 35th street, was struck by one of the defendant's yellow cabs, which was being driven at an excessive rate of speed, and killed.

It is the theory of the defendant that the cab was being driven at an ordinary rate of speed, approximately 10 to 12 miles an hour, that it had passed 35th street going south and was being driven along the boulevard (Western avenue) on the right, the west side, a few feet from the curb; that when it was about 35 feet south of the south crosswalk of 35th street, the boy suddenly darted out from the grass plot into the boulevard about 5 feet in front of the cab; that although the driver did everything reasonably possible to avoid striking him, the cab ran over him causing such injuries that he shortly afterwards died; that the driver was not guilty of negligence.

It is contended by counsel for the defendant (1) that the verdict is against the manifest weight of the evidence; (2) that the plaintiff did not show any care had been exercised for the safety of the deceased; (3) that the court erred in admitting certain evidence; and (4) that the court erred in giving instruction numbered six.

(1)  Is the verdict against the manifest weight of the evidence?  In determining that question two sets of facts are of chief importance; the speed of the cab at the time of the collision, and the conduct of the boy just prior to the time of the collision.

The collision occurred between 2:30 and 3 p. m. of Decoration Day, May 30, 1918.  Wilson (for the plaintiff) says the cab shot over 35th street going south on Western avenue at 18 miles an hour; that the boy was coming along east on the south crosswalk of the intersection; that the left-hand wheel (in front) struck the boy; that the cab carried him a distance of 15 feet; that the cab went 60 or 80 feet after it struck him. Fedderson (for the plaintiff) says that the neighbor-

hood was closely built up; that he saw the boy when he was rolling out from under the machine, that he did not see him struck; that the cab was going over 20 miles an hour; that the cab went the distance of 7 or 8 lots after it struck the boy; that the boy, after it was over, was lying a little over two lots south of the crosswalk. Schickel (for the plaintiff) says that the locality is built up; that the cab was going from 25 to 30 miles an hour; that when the cab stopped it was about 80 feet south of the 35th street crossing; that the boy was picked up about 60 feet south of the crossing; that no horn was blown. Ginsberg (for the plaintiff) says it is not closely built up; that it is a residence, not a business neighborhood; that the cab was going about 35 miles an hour; that both the wheels nearest the curb went over the boy and the cab went on about 30 feet. Korn (for the plaintiff) says that he got off a westbound car on 35th street and Western avenue at the front end; that the car then started up; that the cab passed in front of the car; that after the car passed he watched to see if the boy got over safely; that he then saw the boy roll out from under the back end of the cab; that the boy was then lying 35 feet south of the crosswalk, 8 feet from the west curbing; that at the time the cab was going about 30 miles an hour; that the cab went on past six or seven houses. Piper (for the plaintiff) says he did not see the collision; that his back was turned; that he heard the thud, turned around and saw the boy's body roll from under the cab about 35 feet south of the corner; that the cab went on about 100 feet. McGarry (for the plaintiff) says that he was motorman on a car going east on 35th street; that as he was approaching the boulevard the cab passed in front of his car; that he saw the rear wheel of the cab go over the boy; that the cab was going from 20 to 25 miles an hour; that the cab went more than 150 feet after the collision; that

the boy was then lying about 20 to 25 feet south of the crosswalk.

Farber (for the defendant), who drove the cab in question, says that he stopped north of 35th street; that when he crossed the car tracks on 35th street, going south, he was going between 6 and 7 miles an hour; that when he got across he "picked up" a little; that he first saw the boy when he came off the curb about 35 feet south of 35th street; that at that time his cab was about 4 or 5 feet from the curb, that, when he first saw the boy, he ran off the curb, between 3 and 4 feet south of the front end of his cab; that he applied all the brakes, shouted "look out" and turned the wheels toward the east. On cross-examination he testified that he stopped, originally, about 30 or 40 feet north of 35th street to let a westbound car pass; that when he struck the boy he was going about 12 to 14 miles an hour and went about 18 feet after he saw the boy and before he struck him; that when going 12 to 14 miles an hour he could stop in 18 or 20 feet.

A. J. Groetsch (for the defendant), who was driving a car south on Western avenue, behind the yellow cab, says that when the cab passed him about 60 feet north of 35th street, it was going between 8 to 10 miles an hour; that it slackened for the crossing; that then it crossed 35th street; that when it was about 25 feet beyond, going south, the boy ran out from the grass plot on to the boulevard directly in the path of the cab; that it then struck the boy, the rear passing over him; that, at the time, it was going approximately 11 or 12 miles an hour. On cross-examination he said that the boy traveled about 5 feet after he left the west curb before he was struck.

Fred W. Groetsch (for the defendant), a brother of the former witness, and who was riding at his right, says that he first noticed the yellow cab when it slowed up to let the westbound street car pass; that, at the time the boy ran out, the cab was about 6 feet from

the curb; that the boy was about 25 feet south of the south side of the intersection; that the boy darted right out and ran into the right side of the cab; that the front part of the fender struck him; that the cab stopped after it was 3 or 4 feet ahead of the boy; that at the time of the collision the cab was going about 8 or 10 miles an hour. On redirect, he said that when the boy darted out he was about 8 or 10 feet in front of the cab.

Andrew F. Groetsch (for the defendant), father of the two preceding witnesses, and who was sitting on the right-hand side in the back of the Groetsch automobile, said that the yellow cab stopped at 35th street to let a street car pass; that the cab then went across 35th street at 6 or 7 miles an hour; that it then "opened up" and went, about, from 10 to 12 miles per hour; that about 15 or 20 feet south of the crossing he noticed the boy run from the grass plot, straight in front of the car, about 4 to 6 feet from the curb. On cross-examination he said the boy was running "good and fast"; that he ran about 6 or 8 feet from the first time he saw him.

Krimmel (for the defendant), who was driving his own car on the east side of the boulevard, coming north, and who was about 150 to 200 feet south of where the collision took place, said that the boy started to run when he was about 10 to 12 feet from the cab; that the cab was about 5 feet from the curb; that the boy was struck by the cab, between the radiator and the front fender; that he went down, seemed to roll over and roll in between the wheels; that the rear wheel passed over him, that at the time the cab was going about 15 miles an hour. On cross-examination he said that the boy was struck about 35 feet south of the south crosswalk. On redirect, he said that the boy seemed to run against a tree which was 35 or 40 feet south of the south crosswalk, tag it

with his hand and then turn around and run out towards the street.

Van Sickle, shop superintendent for the Yellow Cab Company, defendant, said that he inspected the cab in question about 5 p. m. the day in question, after it was brought in; that it had a governor on, and that the utmost speed, according to a then made test, which the car could make was 19¾ miles per hour.

On the subject of where the boy was when he was struck, whether on the south crosswalk or further south, the evidence is as follows: Wilson said he was running along on the crosswalk; Schickel said he was walking east on the sidewalk on the south side of 35th street; Ginsberg said the boy was on the corner on a line with the sidewalk. Korn and Piper said that after the collision the boy was about 35 feet south of the crosswalk, and McGarry puts it at 20 to 25 feet, and says he did not see the boy on the south sidewalk of 35th street. Farber said, 35 feet south of the crosswalk; A. J. Groetsch and Fred W. Groetsch both said 25 feet south; Andrew Groetsch said 15 to 20 feet south and Krimmel said about 35 feet south.

The evidence shows that no horn was blown and no warning given.

Obviously, there is a serious conflict in the testimony, both as to the speed of the cab and the place where the boy was at the moment of the collision. As to the speed, Wilson says, 18 miles an hour, Fedderson, over 20; Ginsberg, about 35; Schickel, 25 to 30; Korn, 30 miles; and McGarry, 20 to 25 miles an hour. Five out of six witnesses for the plaintiff put the speed at over 20 miles an hour. For the defendant, the driver of the cab put it at 12 to 14; A. J. Groetsch at 11 or 12; Fred W. Groetsch at 8 or 10; A. F. Groetsch at 10 to 12 to 15; Krimmel at 15 miles. It is to be observed that the Groetschs were all directly back of the yellow cab, and that Krimmel was from 150 to 200 feet practically directly south, and that their positions for

the purpose of judging the speed of the yellow cab were somewhat inferior.

As to just where the boy was when struck: For the plaintiff, Wilson, Schickel and Ginsberg said he was on the crosswalk. For the defendant, Farber said 35 feet south; two of the Groetschs, 25 feet south; A. J. Groetsch, 15 to 20 feet south, and Krimmel, 35 feet south.

It is impossible to reconcile the testimony either as to the speed at the time of the collision, or concerning the place where the boy was when struck. If he were on the crossing, as stated by Wilson and Schickel, and which was corroborated by Ginsberg, then quite obviously the defendant is chargeable with negligence. Further, even if he ran into the boulevard from a point south of the crosswalk, and the cab was going at the average speed testified to by the witnesses for the plaintiff, the defendant would be chargeable with negligence. The plaintiff was a child only 6 years and 5 months old and cannot be legally chargeable with negligence. The question which the evidence presented was whether the driver was negligent.

If the jury, upon a consideration of all the evidence, concluded it was justified in giving credence to the testimony of the plaintiff's witnesses, and distrusting that of the defendant's, it is quite justified in finding the defendant guilty. Fedderson, Ginsberg, Schickel, Korn and McGarry all put the speed at over 20 miles an hour. One of them says 35, one 30, and one 25 to 30, and one 20 to 25. Considering the place and the circumstances, the jury might quite justifiably find that such speed was not reasonable, but dangerous and constituted a plain violation of the obligation to exercise reasonable care. We do not feel warranted, therefore, in concluding that the verdict was clearly against the weight of the evidence. It was chiefly a question of credibility. There are discrepancies, some irreconcilable, but it is well known that whenever a large number

of eyewitnesses undertake to relate what they have seen concerning such a quickly concluded transaction, hardly two narrations will completely accord.

It is further contended that the parents did not exercise sufficient care for the safety of the boy. The evidence shows that, at the time, the father was a locomotive engineer and was at work away from home. The mother was at home and had seen her son playing downstairs, about ten minutes before his death. After talking with him, she went upstairs for a few minutes and then came down and called him, but he was not there. Almost immediately afterwards she saw a crowd running toward 35th and Western avenue and learned he had been run over. On cross-examination she testified that she had given him a dollar bill and a note, crumpled together, to hold; that she told him to wait for her until she went upstairs to get her boudoir cap and button her shoes, and until she came downstairs. Quite obviously, upon that evidence, the question of sufficient care on the part of the mother was a matter for the jury.

In *West Chicago St. Ry. Co. v. Liderman*, 187 Ill. 463, the court said: "It is undoubtedly the duty of parents in cities to use reasonable care to guard their children against the known danger to them when allowed to go unattended upon the public streets; but the standard of such care is not capable of being defined by the law, and each case must depend upon its own facts and circumstances. That it is not negligence *per se* to permit infants to be upon the streets of a city was held by this court in *City of Chicago v. Major*, 18 Ill. 349." *Chicago & A. R. Co. v. Logue*, 158 Ill. 621; *City of Chicago v. Hesing*, 83 Ill. 204; *Illinois Cent. R. Co. v. Warriner*, 229 Ill. 93; *Livingston v. Blind*, 138 Ill. App. 494.

We are of the opinion that the jury were fully warranted in finding that the parents exercised that de-

gree of care for the safety of their son which the law required.

It is contended that the evidence offered on that subject was not competent, but as the law in such a case requires proof of care on the part of a parent and as the facts constituting that proof necessarily occur in the absence of the defendant, it would seem but reasonable to consider such evidence as competent on the ground of necessity and as an exception to the general hearsay rule.

It is contended by counsel for the defendant that it was error to give, on the plaintiff's behalf, the following instruction:

"The court instructs the jury that if they believe from the evidence that the plaintiff's testate at the time of the accident was a child under the age of 7 years, then said child cannot, because of his tender years, be guilty of or charged with carelessness or negligence, in respect to the accident in this case."

It is claimed that the word "negligence" should have been preceded by the adjective "contributory." We are of the opinion that that contention is untenable. The instruction did not direct a verdict. Instructions numbered 4 and 19, which were given for the defendant, informed the jury that the defendant could not be found guilty unless shown to be negligent. Instruction numbered 6 stated a true principle of law. *Chicago City Ry. Co. v. Tuohy*, 196 Ill. 410. In the latter case the court speaks of "negligence" without the qualifier, "contributory."

Counsel for the defendant have called our attention to *Hartray v. Chicago Rys. Co.*, 290 Ill. 85, and contend that as the declaration does not in specific terms state that the action was brought within one year it is defective. But it must be observed that in the instant case the declaration alleges that the disaster occurred on May 30, 1918, and the record shows that the declaration was filed on October 25, 1918, being less than 5

months after the injury and, therefore, it must follow that the defendant was informed when the declaration was filed that less than twelve months had elapsed since the occurrence of the events charged.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

O'Connor, P. J., and Thomson, J., concur.