George Elliott, Administrator of the Estate of Elnora Elliott, Deceased, Appellee, v. Atchison, Topeka & Santa Fe Railway Company, Appellant.

Gen. No. 8,267.

468

Opinion filed October 5, 1931.

LAWRENCE, NELSON & NEAGLE, EMMET TRAINOR and F. W. MILLER, for appellant.

HARDY, HARDY & HARDY, for appellee.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

This suit was instituted by George Elliott, administrator of the estate of Elnora Elliott, deceased, appellee, in the circuit court of Knox county against the Atchison, Topeka & Santa Fe Railway Company, appellant, on account of the death of appellee's intestate.

A jury trial was had with a finding in favor of appellee in the sum of $2,999, upon which judgment was rendered, and this appeal followed.

For convenience appellee will be referred to as plaintiff and appellant as defendant.

The declaration consists of seven counts charging various acts of negligence in the operation of the train of the defendant company.

To the declaration the defendant pleaded the general issue. More than a year later the defendant withdrew its plea and filed a demurrer to the declaration which was overruled and the plea of the general issue was again filed by the defendant. It appears that on the afternoon of November 27, 1928, a Mrs. Johnson, Blanche Smith and Elnora Elliott, plaintiff's intestate, left Knoxville, Illinois, in a Pontiac sedan automobile for the village of Laura in Peoria county. The automobile was owned by the husband of Mrs. Johnson, and was driven by her when the parties left Knoxville. At the time of the accident Elnora Elliott and Blanche Smith were riding in the back seat, and at about the hour of 1:45 in the afternoon, as the auto-

mobile was undertaking to cross the defendant's double tracks at a highway crossing on the west side of the village of Laura, the automobile was struck by a passenger train of the defendant and all three of the occupants were then and there instantly killed.

It is the contention of the plaintiff that the automobile was traveling north at a speed not to exceed 8 to 15 miles per hour at the time of the approach to the crossing. The collision occurred at an intersection of state road 78 with the railway tracks at Laura, in the said county of Peoria; that the train of the defendant, at the time of the collision, was traveling west at the rate of 60 to 62 miles per hour. It appears that in the construction of the paved road on which plaintiff's intestate was traveling, the defendant built a temporary line approximately parallel with route 78 upon which it hauled its cars of road-building materials; that after the pavement was complete the rails were taken up and piled along the east side of the road, and on the company's right of way. The piles of rails obstructed the view from the highway towards the east for the entire length, and in addition to the rails there was a clam-shell excavator, a road building machine in close proximity. There were a number of witnesses testified in the case with the usual and customary divergence in their testimony, but in the main they substantially agreed upon the material facts.

A number of reasons are assigned by the defendant for a reversal of the judgment.

It is urged that the trial court erred in holding the declaration sufficient; in refusing instructions asked by it; in giving instructions asked by plaintiff; in excluding evidence offered by defendant; and in refusing to direct a verdict for the defendant.

The first question discussed by the defendant is that the declaration does not state a cause of action

for the reason it failed to aver the suit was commenced within one year after the death of plaintiff's intestate.

It is the contention of the defendant that, notwithstanding the fact that the record may disclose that the suit was brought within one year after the death of the deceased, yet unless it is specifically averred in the declaration that the suit was commenced within one year after the death, it fails to state a cause of action. With this contention we cannot agree. The declaration avers that on November 27, 1928, the defendant was operating a certain railroad and Elnora Elliott was then and there riding as a passenger in an automobile and that the defendant then and there by its servants negligently and carelessly operated its train and struck the automobile in which plaintiff's intestate was riding, and she was then and there killed.

The record discloses that the *praecipe* for summons in this cause was filed on January 24, 1929; that the declaration was filed January 25, 1929, less than two months after the date of the collision in question that resulted in the death of plaintiff's intestate.

The question is, will the court take judicial notice of the date of the commencement of the suit and the filing of the declaration?

*Linehan v. Morton,* 221 Ill. App. 70, was a suit brought to recover damages for the death of a boy as a result of a collision between a bicycle ridden by the boy, and an automobile driven by the defendant. On page 74 the court in its opinion said: "It is also contended by appellant that the declaration does not state a cause of action in that it does not allege the date of death, or when the action was begun. The case of *Hartray v. Chicago Rys. Co.,* 290 Ill. 85, is cited on that point. In that case the declaration gave the date of the injury but not the date of the death, and the suit was brought more than a year after the date of the injury. It was held that there was no cause

of action, it not appearing that the action was begun within the statutory period of one year, which fact went to the existence of the right of action itself. In the case at bar, however, it appears from the declaration that the injury which resulted in decedent's death occurred November 14, 1917, and the record shows that summons was issued in the following May, that defendant entered his appearance to the suit in the following June, and that the declaration was filed in the following July, about eight months after the injury declared upon. The court takes judicial notice of the date of the institution of the suit as it appears on the record or from the mark on the papers. (17 Amer. & Eng. Encyc. of Law 926, and authorities cited.) And it is unnecessary to allege in a pleading facts of which the court will take judicial notice. (*Goodman v. People*, 228 Ill. 154; *Gunning v. People*, 189 Ill. 165.) In fact, such matters should not be pleaded. (12 Encyc. Pl. & Pr. 1.)'' The Supreme Court denied a petition for certiorari in above case.

*O'Connell ·v. Yellow Cab Co.*, 222 Ill. App. 118, involved the same question, beginning at page 127, where the court said: ''Counsel for the defendant have called our attention to *Hartray v. Chicago Rys. Co.*, 290 Ill. 85, and contend that as the declaration does not in specific terms state that the action was brought within one year, it is defective. But it must be observed that in the instant case the declaration alleges that the disaster occurred on May 30, 1918, and the record shows that the declaration was filed on October 25, 1918, being less than five months after the injury, and, therefore, it must follow that the defendant was informed when the declaration was filed that less than twelve months had elapsed since the occurrence of the events charged.''

*Lindelsee v. Chicago, Ottawa and Peoria Ry. Co.*, 226 Ill. App. 20, was a case brought to recover for the

accidental death of plaintiff's intestate. The declaration averred that plaintiff's intestate was employed by the Illinois Central Railroad Company, but failed to aver that the said railroad was engaged in interstate commerce. Demurrers to the declaration were sustained in the circuit court on the grounds that the declaration did not show the plaintiff's intestate to have been engaged in interstate commerce, and that it was therefore conclusively presumed that deceased was working under the protection of the Illinois Workmen's Compensation Act, Cahill's St. ch. 48, ¶ 201 *et seq.* In its opinion at page 23, the court among other things said: "It is not averred that the Illinois Central Railroad Company is a railroad having tracks extending beyond the borders of the State of Illinois and engaged in interstate commerce. Nor do we think such an averment is necessary. Courts will take judicial notice of whatever is, or ought to be, generally known within the limits of their jurisdiction. It is a matter within the common knowledge of the people of this State that both the Congress of the United States and the General Assembly of the State of Illinois have enacted legislation in aid of the construction of this railroad for the purpose of making it a common carrier extending the length of the Mississippi Valley and connecting the Great Lakes with the Gulf of Mexico. . . . And matters of which courts take judicial notice need not be stated in the pleading. (Encyc. Pl. & Prac., vol. 12, p. 1.)"

Moreover, *Wall v. Chesapeake & Ohio R. Co.*, 200 Ill. 66, was a death case under the Injuries Act, Cahill's St. ch. 70, requiring suit to be brought within two years after the death. The declaration showed on its face that more than two years had elapsed between the death and the bringing of the suit. A general demurrer to the declaration was sustained, defendant arguing that the question of limitation could

be raised by demurrer, and the court held that such pleading is contrary to the established rules and precedents; that the question must be raised by plea.

The *Goldstein* case, 286 Ill. 297, was a death case brought under the Injuries Act, Cahill's St. ch. 70. Judgment was had for the plaintiff. On appeal, the defendant urged, as a ground for reversal, that the court refused leave to file a plea averring that the cause of action did not accrue within one year before the suit was brought, and at page 301 the court said: "It was a right of defendant given by statute to interpose the defense sought to be availed of," and on page 302 the court further said: "That the suit was not brought within a year after the death occurred was a legal defense, and it was an abuse of discretion to deny defendant the right to plead that defense." The cause was reversed and remanded with directions to give defendant leave to file its additional plea.

*Carlin v. Peerless Gas Light Co.*, 283 Ill. 143, was a death case brought under the Injuries Act, Cahill's St. ch. 70, and the defendant filed a special plea that the suit had not been brought by the plaintiff within a year of the death of her intestate. A demurrer was sustained to the plea and the defendant elected to stand by it. There was also a plea of not guilty, trial and judgment for plaintiff. On appeal the full error considered was a sustaining of the demurrer to the special plea. The decision of the court was, "In our opinion the demurrer to the special plea should have been overruled, and for the error in sustaining it, the judgment will be reversed and the cause remanded."

It seems from the three cases last above cited that the court has held a failure to sue in the time limited by the statute is a matter of defense that must be raised by plea; whatever the rule may be in that respect we are of the opinion that the declaration states a cause of action and that the contention of the defendant is not well taken.

It is next urged as a ground for reversal of the judgment that the court erred in refusing to give instruction 4 offered by it. Said instruction is as follows: ''The court instructs the jury that if you believe from the preponderance of the evidence in this case that the defendant is guilty of negligence as charged by plaintiff in his declaration or some count thereof, and if you further believe from the evidence that plaintiff's intestate, just prior to and at the time of the accident in question, was also guilty of negligence although but slight negligence, and that her negligence, if any is shown by the evidence, contributed in any way, although but slightly, to the injuries resulting in her death, then you should not compare such negligence, if any, of the defendant to, or with such negligence, if any, of Elnora Elliott, and you should find the defendant not guilty.'' It was not error to refuse this instruction. It is contrary to the holdings of the court in *Chicago City Ry. Co. v. Dinsmore,* 162 Ill. 568; *Chicago, R. I. & P. Ry. Co. v. Hamler,* 215 Ill. 525.

It is next insisted by the defendant that it was error for the court to give the fifth and eleventh instructions offered by the plaintiff. The criticism of the fifth instruction is, it does not advise the jury that when obstructions are charged to be one of the proximate causes of an injury the defendant must have a reasonable time in which to discover and remove the obstructions. The instruction requires the plaintiff to prove by a preponderance of the evidence ''that defendant knew or by the exercise of reasonable care, should have known'' of the obstructions and failed to remove them, and then tells the jury that if they believe from the greater weight of evidence the failure to remove them was negligence which contributed to the injury, they should find for the plaintiff, if as stated in a former part of the instruction, the plaintiff was in

the exercise of due care. Instructions should be based upon the evidence in a case, and when this one is read in the light of the evidence in this cause, there is no reason to think the jury was or even could have been mislead by it. If it did not mislead the jury into a mistaken or improper finding, the defendant has no just cause of complaint. These obstructions were there for a number of days in full view of all the agents and servants of the defendant, and the self-evident fact that they constituted a hazard was entirely ignored, no move being made to eliminate it.

As to instruction number 11, it was given in *Passwaters v. Lake Erie and W. R. Co.*, and was approved in 181 Ill. App. 44; this instruction, so far as we have been able to ascertain, has never been held to be bad and was justified under the issues and the evidence in this cause.

Defendant complains of the giving of instructions 6, 7, 8, and 12 submitted by the plaintiff. Instructions 6, 7, and 8 are not subject to the objections made. They relate to the negligence of both the plaintiff and defendant. No special reason is assigned except that they submitted a question "upon which there could be no reasonable difference of opinion either in fact or in law."

The record discloses that the defendant presented a number of instructions submitting the same questions transversely thus recognizing there could be a reasonable difference of opinion.

As to instruction number 12, no reason is assigned for the objection. It relates to the measure of damages. Complaint is made by the defendant of the exclusion of certain evidence. Meham, a witness for the defendant, testified in chief that before the car plaintiff was in had reached the track which he had just crossed from the north, he opened the door of his car, waving his hand and "hollered that a train was

coming.'' On redirect examination he was asked this question: ''You stated you gave a warning of the train coming. Will you state what you said?'' An objection to the question was promptly sustained. It is said that a plat was offered in evidence as an exhibit. It is not shown in the abstract and the court will not search the record nor refer to it to find an error on which to base a reversal. That the defendant was guilty of negligence and that its negligence contributed to the collision and consequent injury is so clearly shown by the evidence that we deem it unnecessary to discuss that phase of the case.

A more interesting question arises. That is, does the evidence show the plaintiff was in exercise of due care for her own safety, or does it show she was guilty of negligence which contributed to her injury? The burden was on the plaintiff to show ordinary care, or due care, that is, the absence of contributory negligence on the part of his intestate.

In *Greenwald v. Baltimore & Ohio R. Co.*, 332 Ill. 627, at page 632, the rule for the guidance of the court in determining whether the question shall go to the jury is laid down in the following words: ''The question of due care on the part of a plaintiff is a question for the jury when there is any evidence given on the trial which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care, but where the evidence, with all legitimate inferences that may be legally and justifiably drawn therefrom, does not tend to show due care on the part of the plaintiff, the trial court is justified in instructing the jury to find a verdict for defendant.'' This we understand to mean is a question of law for the court to determine whether there is any evidence of due care, if the court finds there is such evidence it will be given to the jury to weigh, and from it determine, as a question of fact, whether it shows due care or not.

The record discloses that the jury were instructed at the suggestion of the defendant defining ordinary care as "that degree of care which an ordinarily prudent person, situated as the deceased was, as shown by the evidence before and at the time of the injury, would usually exercise for her own safety." The defendant also informed the jury that "contributory negligence is want of ordinary care on the part of a person, that is to say, the want of such care as an ordinarily prudent person would have exercised under the same or similar circumstances, which either by itself or concurring with the negligence of the defendant, if any, proximately caused the injury." Here we have a rule, which, when applied under the supervision of a court to the facts in a particular case, is rigid enough to protect the defendant and flexible enough not to injure the plaintiff by its application. By the use of this rule we obtain the standard of conduct with which the acts of plaintiff must conform. It is a standard obtained under the rule by comparing the acts of the plaintiff with what the average mind would expect the acts of the average human to be under the circumstances of the particular case; not what the average mind would expect the rash, reckless, or foolhardy to do or omit to do nor yet what it would expect the ultra timid or extremely cautious to do or omit doing in the same situation. Such a standard may be used to measure the conduct in any case. It takes into consideration all of the evidence—all the facts and circumstances and proof, and with equal facility measures the conduct of the plaintiff whether she is crossing a railroad where the view is obstructed or where it is clear; whether she is proceeding along a wide, straight and level highway or one that is narrow with many curves and hills; whether she is afoot, on horseback, in an ox cart, carriage or car, whether she is a driver or passenger. After viewing the whole picture and determining the exact situation, was the

plaintiff at and just before the accident, acting as a reasonably prudent person would be expected to act under like circumstances? If, in the judgment of the court, there is nothing in the evidence from which the jury might rationally conclude the acts or omissions of the plaintiff conform with this standard, the court following its judgment will so say and direct a verdict for defendant as a matter of law. If, in the judgment of the court there are facts and circumstances shown by the evidence from which the jury might rationally conclude the plaintiff acted in conformity with the standard, the court will then submit the question to the jury as one of fact.

In the instant case the court viewing the situation as shown by the evidence found there was some evidence "given on the trial which with any legitimate inference that may be legally and justifiably drawn therefrom tend to show the use of due care" and pursuant to such finding the court gave the case to the jury on that question. The jury weighed the evidence and said the defendant was guilty of actionable negligence, and plaintiff's intestate was free from contributory negligence. The trial court declined to disturb the finding. The evidence on what happened is contradictory at several points but there is no dispute about the speed of the train and very little as to the speed of the automobile, nor as to the character of the obstructions. These facts should be taken into consideration in passing on the conduct of the plaintiff's intestate. Other circumstances to be considered in determining whether she was guilty of contributory negligence may be noted:

1. She was not able to drive a car, and that when she rode in one she was always a passenger.

2. There was no clear view to the east until one reached the switch track, it being the most southerly of the three tracks there.

3. The car made a great deal of noise passing over the fresh loose gravel.

4. If it stopped at the stop sign the view to the east was obstructed from there.

5. Two cars crossed from the north side just as plaintiff's car was approaching from the south.

All of these things are to be considered and must enter into the determination whether the deceased was required to do anything in the one or two seconds it took to drive from the switch track to the north main. Did she, or would any one so situated, have time to do anything that would have prevented the accident? Can it be said, as a matter of law, she had any reason to think she was not being properly transported up to within two or three seconds, at the very most, before the crash, or that her behavior during that time or up to that time, contributed in any degree to the collision? Then there is also the character of the testimony of each witness to be weighed, and its probative force to be determined before we can say whether or not the conduct of the plaintiff's intestate was that of an ordinarily prudent person. We are not unmindful of the fact that some courts of high authority, notably the United States Supreme Court, have used language seeming to hold that the omission of one particular act would under any condition or set of circumstances be sufficient to convict the plaintiff of contributory negligence as a matter of law, but in nearly all the cases we have read there was found some qualifying language, as in the *Goodman* case, 275 U. S. 66, in which Mr. Justice Holmes says: "For it appears to us plain that nothing is suggested by the evidence to relieve Goodman from responsibility for his own death." Of course, when a court arrives at that conclusion it can and should say there is no evidence of due care. Due care being a necessary element, the court is bound to hold as a matter of law, the plaintiff cannot recover. The learned justice how-

ever proceeds with great caution using qualifying words to argue the question a little further, but he does not' speak with regard to any other set of facts, he does not purport to change any rule or modify in any way the standard definition of due care.

In *Chicago & Northwestern Ry. Co. v. Hansen,* 166 Ill. 623, 628, the late Justice Cartwright speaking for the court said: ''It seems to us impossible that there should be a rule of law as to what particular thing a person is bound to do for his protection in the diversity of cases that constantly arise and the question what a reasonably prudent person would do for his own safety under like circumstances must be left to the jury as one of fact.''

In *Gills v. New York, C. & St. L. R. Co.,* 342 Ill. 455, the court speaking through the late Justice Farmer after referring to the holding in the *Goodman* case approves what was said in the *Hansen* case, and used the following language, ''What particular thing a person is bound to do for his protection in the diversity of cases that may arise and what a reasonably prudent person would do for his own safety must be left to a jury as a question of fact.'' The same rule is announced in *Dee v. City of Peru,* 343 Ill. 36, 42.

With the entire scene before us we think there is evidence in this record to show the conduct of the plaintiff's intestate was what might be expected of a reasonably prudent person under like circumstances and we are unable to say the verdict of the jury is manifestly against the weight of the evidence. Having considered the various objections raised and urged by the defendant to the action of the court during the trial and in rendering judgment on the verdict of the jury, we conclude that no reversible error was committed by the trial court and that the judgment of the circuit court should be affirmed, which is accordingly done.

*Judgment affirmed.*