# OHIO & MISSISSIPPI RAILWAY COMPANY

## v.

# RICHARD WANGELIN, ADMINISTRATOR.

*Master and Servant—Negligence of Master—Railroad Company— Personal Injuries—Defective Draw-bar—Cars with Platforms of Unequal Height—Fellow-servants.*

1. It is proper to refuse an instruction, the substance of which is embodied in one given for the same party.

2. Likewise one invading the province of the jury, by instructing them in a given case that there was no evidence to prove a material fact.

3. It is not necessary in an action brought to recover for the death of a servant through the alleged negligence of his employer, in order to recover substantial damages, that proof be introduced as to the amount contributed by deceased in his lifetime toward the support of the next of kin, in view of the uncontradicted facts that he actually did contribute to the relative's support, and that such person actually was in need of help.

4. How such pecuniary damage is to be measured, must be largely left to the discretion of the jury in a given case. This court holds the sum of $2,000 to be reasonable in the case presented.

5. A master must use reasonable diligence to provide his servant with reasonably safe machinery and apparatus, which such servant is employed to operate. This law is not only applicable to the machinery owned by the master, but to other machinery and apparatus owned by another person than the master, which the servant is required in the line of his duty to use, and the rule applies to cars of other roads.

6. No defect is latent that an inspection will disclose.

7. A master is not entitled to notice of defects in appliances which he is bound to furnish in proper shape for the work they are called upon to perform.

8. In the case presented, this court holds that defendant was guilty of negligence in furnishing a certain car belonging to another road for the use of its employe, who was killed through such use, without giving him notice of its condition.

[Opinion filed June 21, 1892.]

APPEAL from the Circuit Court of St. Clair County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

Messrs. POLLARD & WERNER, for appellant.

Messrs. TURNER & HOLDER, for appellee.

SAMPLE, J.  This suit was brought by the administrator of Frank O. Wangelin, deceased, to recover damages for the death of his intestate, occasioned, as alleged, by the negligence of appellant.  The declaration in two counts charges, first, that the deceased was crushed between two cars while attempting, as a brakeman, to make a coupling, owing to a defective draw-bar, of which appellant had notice, which broke, and thus permitted the cars to come together, at which time the deceased was in the exercise of due care; second, that in addition to the above, the draw-bar of one car was so much higher than the other that when the cars came together, one draw-head passed under the other, and thus the bodies of the cars came together, crushing the deceased.  The evidence discloses substantially the following facts: that deceased was in the employ of appellant as rear brakeman on the second day of April, 1890, the day of the accident; that when his train reached Odin, where appellant's line of road intersects that of the Illinois Central, it pulled up to the platform of the station and was then cut in two; a part of the train ran to a switch north of the main line and near to the depot for the purpose of taking on a car from the Illinois Central line; that deceased cut the switch to get to that line and also shut it, as the train came back on the main line with the extra car, went ahead of the moving portion of the train, picked up a pin and link that he had placed on the platform, adjusted them in the end of the draw-head of the Illinois Central car, stepped onto the platform of the station, moved along with the train a short distance as it was backing to be connected with the rear portion of the train, and just before the cars came together, caught hold of the iron step at end of the Illinois Central car, then stepped in to make the coupling, when the ends of the bodies of the cars came together and crushed him to death instantly, the draw-bar of the Illinois Central car passing under that of the Ohio & Mississippi car, and breaking off a portion of the latter, which fell on the track; that as the draw-bar of the Illinois Central car passed under that of the Ohio & Missis-

sippi car, the wheels of the latter were raised from the track and the force of the concussion drove back the cut off portion of the train about thirty feet; that the train was backing pretty rapidly, and no signal was given by the deceased to the engineer as to the speed of the moving portion of the train; that the accident happened in the daytime, and was described by three eye witnesses to the same, who were at the time standing on the station platform. The evidence further shows that there was no defect in the material of the draw-bar of the Ohio & Mississippi car; one witness testified that the draw-head had a crack on one edge of it, but does not say whether it was made by the concussion or not; while another witness for appellee says the crack or break was fresh and bright. It further appears from the evidence of the appellant's only witness, the front brakeman, that it is the duty of a brakeman to be cautious not to couple cars when the train is moving too rapidly, and to see that the coupling is in proper condition before he attempts to make it, and to see that the draw-bars are of the same height; also that by the rules of appellant the brakeman doing the coupling has control of the speed of the train. It further appears from the evidence that the deceased left only one sister surviving him, his father and mother and other members of his family having died. The sister, Clara Wangelin, testified that this deceased brother was getting $50 per month, and had contributed to her support; that her brother was twenty-two years of age at the time of his death, and that he had been earning regular wages since he was seventeen years of age, not all, but part of that time; that she was a teacher in a kindergarten school in St. Louis at a salary of $25 for five weeks' teaching, which was not sufficient to support her, and that her brother had assisted in her support.

The case was tried before a jury, which returned a verdict in favor of appellee in the sum of $2,000, which was sustained by the court. The appellant assigns for error that the court refused to give for it proper instructions; that the appellee's counsel in the trial below was guilty of misconduct prejudicial to the appellant; that the verdict is against the

O. & M. Ry. Co. v. Wangelin.

evidence and the law; that it is excessive and that the motion for a new trial should have been granted.

The refusal to give two instructions is complained of in the argument of appellant, the first of which is to the effect that the mere fact that one of the draw-bars broke, was not sufficient, of itself, to establish negligence. This instruction was properly refused for the reason that the substance of it was embodied in the first instruction given for appellant. The second refused instruction was, "that no evidence having been introduced from which it can be ascertained with any reasonable degree of certainty, to what extent the decedent's sister has suffered pecuniary loss by reason of the killing of her brother, Frank Wangelin, your verdict, if for the plaintiff, can only be for nominal damages."

This instruction was properly refused as it invaded the province of the jury by instructing them that there was no evidence to prove a material fact. There was evidence to show that the brother had contributed to the sister's support, but none to show the amount he contributed. It was not necessary in order to recover substantial damages, that there should be such proof, in view of the uncontradicted facts that the deceased actually did contribute to the sister's support, and that she actually was in need of it. As was said in the case of C. & A. R. R. Co. v. Shannon, 43 Ill. 346: "If the next of kin have been dependent on the deceased for support, in whole or in part, it is immaterial how remote the relationship may be; there has been a pecuniary loss for which compensation under the statute must be given." As was in that case further said: "How this pecuniary damage is to be measured, must be largely left to the discretion of the jury; what the life of one person is worth to another in a pecuniary sense, is a question incapable, from its nature, of exact determination." The doctrine of that case has been followed and adhered to in this State whenever the question has arisen. City of Chicago v. Hesing, 83 Ill. 207; City of Chicago v. Keefe, 114 Ill. 230. In the latter case it is said: "The question from its nature is incapable of exact determination, and the jury should therefore calculate the damages in reference to a reasonable

expectation of benefit as of right or otherwise from the continuance of life. Parents and even brothers and sisters might reasonably expect in many ways to derive pecuniary benefit from the continued life of the intestate, as of grace and favor, if not of right, at any age of life, and our statute imposes the duty of support in the event of their becoming paupers, of the parents by the child, and of one brother or sister by another brother or sister." We recognize the distinction made between lineal and collateral kindred by the Supreme Court of this State as to implied pecuniary damages, but in this case there is proof of actual pecuniary damages sustained by the sister in the death of her brother; with that proof in the record, together with the proof of deceased's age, health, ability and inclination to work, his earnings and her state of dependence, we hold that without other proof as to the amount the brother actually contributed, it was proper for the jury to exercise their own judgment from the facts in proof, by connecting them with their own knowledge and experience which they are supposed to possess in common with the generality of mankind (City of Chicago v. Major, 18 Ill. 349), and that direct proof of any specific pecuniary loss is not indispensable to the recovery of substantial damages with such proof in the record. Fisher v. Jansen, 128 Ill. 549, 555. Suppose there had been proof that the deceased brother had actually contributed to the sister's support various amounts during different years, ranging from fifty to two hundred dollars respectively, which amount would have been the proper basis for an estimate as to future contributions? Evidently neither, necessarily, for the condition of the parties might in time, and probably would, have changed. For these and various other reasons that might be assigned, the measurement of damages in such cases can not be fixed by any exact legal rule other than that given in the statute itself, authorizing the action, viz., that "the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death to the * * * next of kin of such deceased person, not exceeding the sum of $5,000." When there is a basis for

substantial damages, as is held to be the fact in this case, the limitation in the amount of a verdict is found not only in the common law authority of the revisory power of courts, but in the statute itself, by declaring that the pecuniary compensation for the loss must be fair and just.

In this connection we will consider the error assigned that the verdict is excessive. As we have no fixed rule other than that above suggested by which to measure the damages, it is somewhat difficult to determine the question. It can only be done by a consideration of the relation and situation of the parties as disclosed by the proof. The beneficiary in this case, it is fair to infer from the business in which she is engaged, is a woman of some refinement and education, and necessarily has to array herself in a manner that will comport with her calling in life. She is poor and only earns while teaching $5 per week. Allowing ourself the liberty in reviewing this verdict which was given by the authority above cited to the jury that rendered it, and connecting the above facts with our own knowledge and experience, and we know that such a small salary would not go very far toward supporting this lady in a reasonably comfortable manner; we further know under the above facts, as a matter of law, that there was no living person that she could legally look to for support in case of the direst necessity other than her brother. Sec. 2, Chap. 107, Ill. Stats. Had he contributed $20 per month to her support, this amount, together with what she earned during a portion of the year while the schools were open, would have required her, living in a city, paying board, arraying herself in a suitable manner, to practice great frugality. Whether he would have paid such an amount we do not know, but this we know, by reasoning along the line of motive that inspires human conduct, there was every incentive and natural prompting of the human heart to make the deceased liberal with his sister, without father or mother, brother or sister other than this beneficiary. Young and rugged in health, apparently industrious, she might reasonably expect, in the language of the Keefe case, *supra*, not only as a matter of right but of grace

and favor, to derive pecuniary benefit from the continued life of the intestate at any age of life. Wherefore, in view of all the facts surrounding this case, we can not say that the verdict is excessive if the appellee was entitled to recover anything, which question we will next consider.

As has heretofore been stated, there is no proof that the draw-bar on the Ohio & Mississippi car which broke was defective; or even if there was such proof there is none that the appellant had the slightest notice of it, and there is no complaint or proof of its improper construction. There is unquestioned proof, however, that the draw-bar of the Illinois Central car which was transferred to appellant's road was lower than the draw-bar of the Ohio & Mississippi car to which it was to be coupled, so much so that it was projected under the latter, whereby the bodies of the box cars were permitted to come together, which defect was the direct cause of the death of appellee's intestate. This defect in the Illinois Central car, if it may be so called, was with reference to its use on the Ohio & Mississippi road, one of construction and not of deterioration or latent imperfection; hence, under the rule of law as to construction, if improper as to its use on the Ohio & Mississippi road, it was not necessary to prove that appellant had notice of that fact, as is said in the case of Alexander v. Town of Mt. Sterling, 71 Ill. 366 : "Why notice to a party of original defects in a work he is bound to make safe and reasonably free from defects? The town being in fault at the outset, no notice was necessary;" citing authority. It is elementary law that a master must use reasonable diligence to provide his servant with reasonably safe machinery and apparatus which such servant is employed to operate. This law is not only applicable to the machinery owned by the master, but other machinery and apparatus owned by another person than the master which the servant is required, in the line of his employment, to use, as held in the most recently published expression of the Supreme Court in the case of Sack v. Dolese, 27 N. E. Rep. 62. The doctrine of this case is supported by a number of decisions of other States; then logically it would appear that it must be considered from a legal standpoint that

the appellant furnished this Illinois Central car to the deceased, and the same elementary rule of duty was imposed upon it to see that the car was reasonably safe for its servant to operate, as that above stated. This it did not do. The draw-bar of the Illinois Central car was so much lower than that of the Ohio & Mississippi car, that it was not only not safe, but extremely dangerous, not only to limb but to life. The defect was not latent; no defect is latent that an inspection will disclose. Dolese case, *supra*. In such a case it is said as to the civil remedy, the question is to be considered as if the master was present, saw the improper construction or use, and with such knowledge permitted the servant to use such machinery. For this reason notice to the master is unnecessary in such cases. It is not contended by appellant's counsel that the draw-bar of the Illinois Central car was not lower than that of the Ohio & Mississippi car, but they say, " The absurdity of the position that such difference in height * * * in this case can furnish a ground for recovery, when the only source of notice to appellant of such difference was the intestate himself, is apparent on the face of it." If this is the correct view as to notice as to foreign cars, then the rule of law should be, " let the servant beware." This view, however, is in direct conflict with the doctrine of the Dolese case, *supra*, and which appellant invoked in its behalf, and wherein it is held, " The same rule of reasonable care with reference to *proper machinery* and *inspection* applies in the case of cars *belonging to other persons* which the servant is required to operate in the course of the master's business, as governs when the cars are owned and provided by the master himself." Merging the doctrine of this latter case into that of the doctrine of notice by the master in case of improper construction of cars " owned and provided by himself," and it would seem that the position of appellant's counsel is unsound.

It must be borne in mind in this connection, that as to the point now under consideration, we are determining the law under conceded or unquestioned facts as to whether they constituted negligence of the master and not as to the contributory negligence of the servant. The latter is relative and

need only be considered in case of proof of the former. The authorities cited by appellant on this question are not considered to be in point, some of them in view of the doctrine as laid down in the Dolese case, and others because of the facts upon which they were based. In Massachusetts the doctrine is that the making up of a train of cars with platforms of unequal heights was the *act of a fellow-servant* and therefore a brakeman can not maintain an action against the corporation (Hodgkins v. Eastern R. R. Co., 119 Mass. 419), and that the rule requiring a railroad company to use reasonable diligence in furnishing its employe with suitable cars does not apply to a car received from another corporation while in transit to its place of destination. That while it does owe the duty of providing competent inspectors for such cars, yet such inspectors and the brakemen using the same are fellow-servants. These cases do not state the law of this State. The case of Whitman v. The W. & M. R. R. Co., 58 Wis. 413, is based upon the same doctrine as the Hodgkins case, 119 Mass., *supra* It is said the attaching, as well as the order detaching the engine from the car, were the acts of the servants of the defendant engaged in operating their railroad, and hence of the co-employe of the plaintiff, and therefore the defendant is not liable for the injury to the plaintiff resulting therefrom. The case of Brooks v. Northern Pacific R. R. Co., 4 Fed. Rep. 687, wherein a switchman was injured by too short a draw-bar on the engine, is based on the contributory negligence of the plaintiff, and the further fact that the rules of the company embodied in the contract of employment which he signed expressly provided that he should inspect and take notice of the style, construction and conditions of draw-heads, links and pins to be used in coupling engines and cars. To show that the doctrine claimed for the above case by appellant was not the rule of the Federal Court, we refer to the case of O'Neil v. St. L., T. M. & S. Ry. Co., 9 Fed. Rep. 337, wherein it is held that an employer who introduces without notice to the employe new and unusual machinery, whether belonging to himself or another, involving unexpected danger, by which the employe while using due care is injured, is liable in damages. See

copious notes to this case. The cases of St. L., T. M. & S. R. R. Co. v. Higgins, 44 Ark. 293; Hulett v. St. L., K. C. & A. Ry. Co., 67 Mo. 239; St. W., J. & S. R. R. Co. v. Gildersleive, 33 Mich. 134; Marsh v. The S. C. R. R. Co., 56 Ga. 274, were very largely based on the actual notice of the brakemen of the condition of the draw-bars and therefore on contributory negligence. The other class of cases cited when brakemen were injured in their hands or arms in the use of different kinds of couplings, wherein proof was made that such was common practice known to railroad men, are not considered in point. Injuries thus occasioned under such a state of facts are held to come within the hazards of the service. We hold under the law of this State, as applicable to the facts in this case, that the appellant was guilty of negligence in furnishing such a car for use by its injured employe without notice to him of its condition.

Was the deceased guilty of contributory negligence? The jury were instructed by the court on this point of law as asked by the appellant. They were instructed that there could be no recovery, if it appeared from the evidence that the deceased was guilty of a want of ordinary care which directly contributed to his death, and then whether or not the defendant may have been guilty of the negligence with which it is charged in the declaration. This instruction made the question of contributory negligence one of primary consideration for the jury. By their verdict it was determined in the negative. Is that finding sustained by the evidence?

The only fact that brings it in question is the speed of the train at the time the coupling was made, and whether or not the deceased should have seen, before the coupling was attempted to be made, the difference in the heights of the draw bars of the two cars that were to be coupled together. It is true that several witnesses who were not railroad men and had no experience in that line of work testified that the train was backed pretty rapidly, yet when the facts testified to by them are considered, the speed does not appear to have been dangerous. As heretofore stated, the evidence discloses that the deceased opened the switch for the detached portion

of the train to run thereon, and also shut it, after the train had come back on the track, and then on foot overtook it, picked up a pin and link on the platform, adjusted them in the draw-head of the Illinois Central car, by which time the two portions of the train were near together, momentarily stepped out on the platform, walked along it a short distance, when he stepped in between the cars just before they met, to make the coupling, and was instantly crushed by the bodies of the cars coming together. There is no evidence that the deceased was particularly rushed, or had to move with more than ordinary celerity to accomplish all this. In view of these facts, outside of the mere expression of opinion, it is quite evident that, so far as the speed of the train is concerned, any railroad brakeman would have done just as the deceased did, and would not have hesitated to go in and attempt to make the coupling. It is not to be presumed that the brakeman and engineer were both reckless and regardless of life. The accident occurred in the day time, when the engineer could see how near the cars were together, almost as well as the brakeman. The fact that the cut-off portion of the train that was left standing on the main track was jarred back thirty feet is not decisive evidence that the concussion was very great, as common experience will prove, especially in the absence of any proof as to the number of cars in that portion of the train and as to the brakes being set. The speed of the train may have been faster than it should have been, especially as it appeared to unprofessionals in that line, but what we hold is, that, in view of all the facts, the act of the deceased in attempting to make the coupling as, and at the time he did, was not an exhibition of recklessness or negligence for an ordinarily courageous brakeman, as regards the speed of the train.

Should he have observed that the draw-bars were of unequal heights? As heretofore suggested, under the law he had a right to presume that they were in reasonably safe condition. We do not mean by this, that the style of the couplings was the same, but that there was no such a difference in height of the draw-bars of the two cars that they

would pass each other, and thus permit the bodies of the cars to come together. With this presumption of law which he had a right to, and doubtless did, as a matter of fact, indulge, he would naturally be thrown off his guard, not as to the difference in the style of the couplers, for with them he had immediately to do, but as to such a difference in the heights of the couplers or draw-bars, with which he had nothing in particular to do. This much for the legal phase of the question. Now as to the facts, they show, as heretofore stated, that the deceased was very busily engaged in opening and shutting switches, gathering up link and pin for their coupling, adjusting them in their proper places, all in the line of his duty, which, as the evidence shows, occupied his undivided attention until the cars were nearly together, when naturally his attention would be necessarily attracted to the proper and safe performance of the most dangerous part of his work. To hold that, under these circumstances, he was negligent, because he did not measure up with his eye the difference in the height of the two draw-bars, would, in our judgment, be imposing a rule of caution and care far above the line of that required by law and denominated ordinary. In the case of Goodrich v. N. Y. C. & H. R. R. Co., 116 N. Y. 398, where a brakeman was injured by a similar defect, and when he had been standing unengaged by the stationary car awaiting the backing of the train to make the coupling, the court, on page 404, say:

" It does not appear that he observed that the draw-bar would pass under the bumper of the stationary car. It was only at the moment that the cars were about to collide that he discovered his error.

" The court can not affirm that for such error of judgment, as it was to some extent by defendant's neglect, he should be held to have been careless under such circumstances. When the whole transaction is the occurrence of a moment, a man is not to be held responsible if he errs as to the estimate of the danger that confronts him. If he acts the part of a prudent man, willing and intending to perform his duty, he has done all the law demands of him, and whether he acted such part under all the circumstances was for the jury to determine."

The remarks of appellee's counsel, that "Mr. Werner excused Mr. Joseph, one of the jurors, because he once employed Wangelin at a threshing machine and knew how well he was able to work," were improper, and the court had the right to orally instruct the jury to disregard such statement, and should have done so on request; yet the character of the statement when considered in connection with its withdrawal by the counsel making it, leads us to conclude that the jury were not prejudiced thereby, or the result of the suit affected in consequence thereof.

There being no material error in the record the judgment is affirmed.

*Judgment affirmed.*