## New Ohio Washed Coal Company v. Emma Hindman, administratrix.

1. VICE-PRINCIPAL—*when master liable for negligence of.* A master is liable for the negligence of his vice-principal, notwithstanding the negligence of a fellow-servant may, likewise, have contributed to the injury in suit.

2. APPLIANCES—*what does not excuse master from duty to exer-*

*cise reasonable care with respect to.* The duty to use reasonable care with respect to the appliances used by the master is not affected by the fact that the particular appliance claimed as defective, namely, a car, was furnished by a railroad company.

3. INSTRUCTION—*should not give undue prominence to particular evidence.* An instruction should not give undue prominence to particular evidence in the case.

4. INSTRUCTION—*should be predicated upon the evidence.* An instruction is improper which is not predicated upon some evidence in the case.

5. INSTRUCTION—*should not ignore any theory of recovery.* An instruction which directs a verdict for the defendant, if the jury find a particular state of facts, should not ignore any theory upon which the plaintiff may have been entitled to recover.

Action on the case for negligence. Appeal from the Circuit Court of Williamson County; the Hon WARREN W. DUNCAN, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed March 17, 1905.

E. E. DENISON and W. H. WARDER, for appellant.

WILLIAM A. SCHWARTZ and HOSEA V. FERRELL, for appellee; A. J. KIMMEL, of counsel.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action on the case for negligence. The declaration contains three counts, all of which are substantially the same. It is alleged that defendant owns and operates a coal mine near Carterville, Illinois, from which it mines and markets large quantities of coal; that the defendant also owns and operates a certain railroad track extending from its coal mine about an eighth of a mile on a down grade to a certain switch, and that it was the custom of the defendant to load coal cars at the mine and send them down this track to be weighed and set out on said switch for shipment to market; that William M. Hindman was employed by the defendant as a laborer and was, on April 18, 1903, engaged in handling coal cars and running the same, when loaded with coal, away from the shaft down the track aforesaid, and placing them for shipment; that while engaged in and about his duties on the date aforesaid, exercising due care for his own safety, the defendant carelessly and negligently

ran a loaded coal car, without brakes in working order, and without having any one on the car to regulate its speed, down the grade on said track at a high rate of speed, to and against a certain other car then and there being on the track, which other car collided with the one about which the said William M. Hindman was working; that by reason thereof the said Hindman was thrown down upon the track and run over and instantly killed; that the said William M. Hindman left surviving him the plaintiff, Emma Hindman, his widow, and six children, all of whom were thereby deprived of their means of support, to the damage of the plaintiff as administratrix of $5,000.

The three additional counts filed by the plaintiff contain substantially the same averments as those originally filed, except that the second and third additional counts allege that the defendant *wilfully* and negligently caused the car, without brakes in working order or having any one riding it, to run down the said track to and against the car Hindman was working with, thereby throwing him down upon the track and running over and instantly killing him. To this declaration defendant pleaded the general issue. A trial by jury resulted in a verdict for $5,000. The court overruled defendant's motion for a new trial and in arrest of judgment and entered judgment on the verdict, from which defendant appealed.

The defendant operated a coal mine and in connection with it a coal washer, and for carrying on the work in the washer two shifts of men were employed—a day shift and a night shift—the deceased at the time of his death being a member of the day shift. Running east and west under the washer, and extending about a quarter of a mile east of it is a switch or storage track. About 200 feet east of the washer and on this track the scales are located. In weighing the coal the loaded cars are run slowly over the scale platform and weighed while passing over the same. As there was no weighman at the mines while the night shift was on duty, the loaded cars were run down near the scales and left there for the day men to run over the scales to be

weighed and then placed by them on the storage track prepared for shipment. East from the washer the grade is downward and loaded cars were moved down over the scales to the storage or shipping track by their own momentum. It was the duty of the night men in placing cars upon the track at night to see that the brakes were set and the cars coupled together. The operation of moving the cars from the washer to the storage track was as follows: After an examination to see that the brakes are in good condition and couplings made, a cut of two or three cars is uncoupled from the other cars, a crow bar is placed under the wheel of the rear car to be moved, and in this way they are "pinched" off or started down the track in charge of two men who control the speed by the use of the brakes. When they reach the storage track they are coupled to other cars on that track and the brakes set. On the morning of April 18, 1903, some eight or ten cars were on the track between the washer and the scales. All except one, a hopper-bottom car, were loaded. Hindman and one other employee pinched off the first two cars and ran them down over the scales to place on the shipping track. They were followed by witness Howell with the empty car to a point two or three carlengths beyond the scales where it was stopped, the brakes set and the coupler-knuckle opened. Hindman having returned, he and witness Stewart took charge of the next two cars which were cut off and started by Howell. They moved slowly down toward the empty car standing on the track. As they approached the empty car Hindman called Stewart to the brake, got off on the north side, went forward to the empty car, and between that and the end of the approaching car. He started to climb up on the east end of the loaded car by placing his foot on the brake-beam and catching hold of the brake-staff. While he was in the act of pulling himself up over the end of the car the collision occurred by which he was thrown off, run over and killed. Just after the two cars were cut off and started with Hindman and Stewart in charge, Howell and Norton started to follow with two more cars. Norton tried the brake on the first

car and found it out of order and stated to Howell and Shuman, the superintendent, who were on the ground a few feet away, that the brake was no good. He then started back over the load of coal to examine the brake on the second car. While doing so Shuman directed Howell to bar out the cars. The cars were not coupled together and the forward one left the other and started down the grade. Howell jumped upon the moving car and tried to stop it, but the brake would not work and he could do nothing. A man near the scales threw a rail under the wheels but failed to stop it. It ran down grade with increasing speed until it collided with the cars in charge of Hindman and Stewart with results as already stated.

It is first contended by appellant that no recovery can be had in this case because the deceased was guilty of contributory negligence and the facts chiefly relied upon in support of this contention is, that at the time of the collision, he was between the cars and in the act of getting upon the end of one of them by means of the brake-bar and staff, instead of using a ladder on the side provided for that purpose. Whether, under the circumstances, the deceased was in the exercise of ordinary care for his own safety was, to say the least, a question of fact for the jury. It is in evidence that the cars with which he had to do were moving very slowly, if at all, and there was nothing in the situation or conditions known to him or which he might expect or anticipate, that made his position or conduct hazardous. True, as it turned out, he was exposed to the danger from a wild car, but this could not possibly happen except through the negligence of those who were to follow on the track; and though it appears that on one or more occasions prior to that time, a car had escaped in like manner and taken the track, uncontrolled, may it be said that this was an occurrence of such frequency, that deceased, as a prudent and careful man, should have been on his guard and in expectation of it? May this be held as a matter of law? We think not. The situation was very different from that of a railroad brakeman in handling moving cars

in a switch-yard, in which the regular operation contemplates the bringing of cars together, often in unexpected collision, by the use of an engine. It is part of the business and the danger incident to such operation, and such business must be taken into account by the employee. But in this case we are not prepared to say that all reasonable minds would hold that the deceased was guilty of contributory negligence.

It is next insisted that Hindman came to his death through the negligence of a fellow-servant, and that this so clearly appears from the evidence that the trial court erred in not instructing the jury to find for the defendant. In argument of this contention appellant attributes the injury to the negligence of the night men in not coupling the cars left upon the track, or of the men who started the wild car in not first seeing that it was coupled to the car next to it. There is evidence tending to prove that Shuman, the superintendent, was present and personally directing the movement of these cars; that in need of space occupied by the cars on the track between the washer and the mine he was crowding the men; that he was told that the brake would not work; and that he ordered the cars pinched or barred out and started down the grade without first knowing or directing an examination to see that they were properly coupled. These men were at the time under his immediate supervision, subject to his orders, and therefore, what he did, or what was done in obedience to his special direction was clearly the act of a vice-principal, and the doctrine of fellow-servants has no application. Whether the negligence of Shuman alone, or of Shuman and fellow-servants of the deceased combined, caused the injury, the defendant is equally liable. Pullman Palace Car Co. v. Laack, 143 Ill. 242; C. & A. R. R. Co. v. Wise, 206 Ill. 453; same case, 106 App. 174; West v. Pullen, 88 App. 620. The immediate cause of the injury was the collision of the uncontrolled car with the cars in charge of plaintiff's intestate. That would not have happened if the brake had been in working order, or if the car had been properly coupled to

New Ohio Washed Coal Co. v. Hindman.

the car next to it, or if it had been moved out on the rear of a car under control of an efficient brake, or if it had not been started without first ascertaining the condition of the brake and coupling. The absence of negligence, the exercise of due care respecting any one of the causes mentioned would, it seems, have prevented the collision and consequent injury. The allegation is that the defendant carelessly and negligently ran a car loaded with coal without brakes in working order down the grade at rapid speed, whereby the injury was caused. Under this general allegation evidence of the concurrent or combined negligence of all whose conduct in any way was a producing cause of the injury was relevant and proper to be considered by the jury. It is further contended that negligence may not be imputed to defendant in the use of the defective car and that the requirements of the master to exercise reasonable care to supply the servant with reasonably safe machinery and appliances has no application for the reason that its business was to use such cars as the railroad company furnished, whether defective or otherwise. This contention is not supported by reason or authority. The cars in use to convey coal from the mine to the shipping track were, for the time, the means and appliances adopted and used by the defendant in and about its business, that of mining, washing and shipping coal. It was not bound to receive defective cars, and from the time it took charge of them and while they were under its control and operation by its servants and employees, the duty of reasonable care was imposed and liability was incurred for any injury caused by neglect or failure respecting the defective condition of the cars in use. McBeath v. Rawle, 93 App. 212; E. St. L. I. & C. S. Co. v. Crow, 52 App. 573; C., B. & Q. R. R. Co. v. Avery, 109 Ill. 314. The defendant's servants were operating and handling cars supplied by the defendant, and it matters not to whom the cars belonged or from whence they were obtained; a duty respecting their condition was imposed by law upon the defendant.

Complaint is made that the court refused to give the de-

fendant's first and fourth refused instructions. The first
was properly refused for the reason that the jury's attention
is directed to a single fact or circumstance disconnected
with all other circumstances bearing upon the question of
ordinary care, and a verdict called for. Whether Hindman
was in the exercise of ordinary care was to be determined,
not alone from the act of climbing upon the car at the end,
but from all the circumstances and conditions shown by the
evidence. The instruction was calculated to mislead the
jury and it was not error to refuse it. Besides, the jury
were fully instructed upon this question by other instruc-
tions given at the instance of both parties. The defend-
ant's third refused instruction submits a proposition of law
not applicable in this case, because it is the undisputed evi-
dence that the car with the defective brake was not "se-
curely coupled" to a car with sufficient brake to control the
two as premised by the instruction. Hence it was properly
refused. The legal substance of refused instruction four is
found in defendant's eighth and ninth given instructions.
As already indicated by our discussion the negligence can
scarcely be imputed to any one act or omission in the series
which culminated in the collision of cars. The instruction
was therefore vicious, in failing to recite all the facts upon
which to base a verdict for defendant. It withheld from
the jury consideration of the question of Shuman's negli-
gence while acting as superintendent or vice-principal.

Finding no prejudicial error in the record, the judgment
of the Circuit Court will be affirmed.

*Affirmed.*