**Charles L. Porter, Appellee, v. Terminal Railroad Association of St. Louis, Appellant.**

**Term No. 4,506.**

Heard in this court at the October term, 1945. Opinion filed January 7, 1946. Re-hearing denied February 14, 1946. Released for publication February 14, 1946.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, of East St. Louis, for appellant.

JOS. B. MCGLYNN, of East St. Louis, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

This is an action instituted by Charles L. Porter, plaintiff appellee (hereinafter called plaintiff) against Terminal Railroad Association of St. Louis, a corporation, defendant appellant (hereinafter called defendant), in the circuit court of St. Clair county, to recover damages alleged to have been sustained by plaintiff on account of personal injuries suffered by him on the 13th day of October 1941. He was then employed as a pilot by defendant, and was engaged in piloting a locomotive engine from the Ashley street plant of the Union Electric Company of Missouri to the Cahokia plant of the Union Electric Company of Illinois. The accident occurred on the tracks of the Union Electric Company of Illinois, south of East St. Louis, Illinois. Plaintiff sustained a fracture of the right leg and other serious injuries.

The suit is brought under the provisions of the Federal Employers' Liability Act and the Federal Safety Appliance Act.

Plaintiff's complaint contained one count. It alleged in substance that defendant was a common carrier, engaged in intrastate and interstate commerce; that for 21 years plaintiff had been employed by said defendant as a switchman; that on the 13th day of October 1941, plaintiff was instructed by defendant to pilot a steam locomotive from the Ashley plant of Union Electric Company of Missouri, in St. Louis, via defendant's lines, to the Cahokia plant of the Union Electric Company of Illinois, at East St. Louis, Illinois; that pursuant to said instructions, under its own power operated by the Electric Company's crew, said locomotive was taken to a point near the Cahokia plant, where it was derailed, while plaintiff was riding in the cab. He was thrown to the ground and injured.

Together with other allegations of negligence on the part of defendant, it is alleged that defendant failed to use ordinary care to make the place where

plaintiff's duties as pilot of said locomotive required him to be, reasonably safe.

Defendant's answer admitted being a common carrier, denied that at the time of the accident, both plaintiff and defendant were engaged in interstate commerce, and denied the other material allegations of the complaint.

The cause was tried before the court and a jury. At the close of all of the evidence offered on behalf of plaintiff, defendant moved for a directed verdict. This motion was denied. At the close of all the evidence in the case, defendant renewed its motion. This was also denied. The jury returned a verdict finding defendant guilty and assessing plaintiff's damages at the sum of $17,500. A motion for a new trial was filed by defendant and was overruled by the court. Judgment was entered for the above sum and this appeal was perfected.

The record discloses that pursuant to defendant's order of October 13, 1941, plaintiff took charge of Union Electric Company steam locomotive Number 1, to pilot it to the Cahokia plant of the Union Electric Company of Illinois. Plaintiff was an experienced railroad man and an experienced pilot, having been employed by defendant for 21 years. The locomotive in question was operated by an engineer and fireman, who were employees of the Union Electric Company, furnished to defendant for the purpose of transporting the engine from the plant in St. Louis to the East St. Louis plant. The duties of plaintiff were to pilot the engine over the company's tracks, or any tracks that the engineer or fireman was not familiar with; to line switches for them; telling the engineer where signals were for or against him and when to stop and go on signals; to call up the yardmaster and get the route over which to travel and on arriving at destination to report to station master at Union station and ask him for further instructions. It is undisputed that plaintiff was at all times under the direction of

his superiors in the employ of the defendant; that he had to get clearance from the yardmaster at St. Louis and authority and direction as to what rails to use in going over the Merchant's Bridge between St. Louis, Missouri and East St. Louis, Illinois; that he again had to get clearance orders and directions as to the tracks he was to use in going through East St. Louis; that it was his duty to stay with the locomotive until it had been delivered inside the Union Electric plant, and that he was not to be relieved from duty until he would go to St. Louis and make out a written report as to what he had done.

The evidence shows that plaintiff rode the front footboard of the locomotive for about a quarter of a mile, but due to the lightness and construction of the engine, he was bounced around so much that it was unsafe for him to continue riding there and he made the rest of the journey in the cab of the locomotive.

After leaving St. Louis, they crossed the Mississippi River via the Merchant's Bridge to Madison, Illinois, thence through Venice, Brooklyn and East St. Louis. After leaving East St. Louis, the journey commenced over the rails of the G. M. & O. R. R. to a switch that led over the rails of the Union Electric Company, thence across a public road and thence inside the fence of the Union Electric Company. Immediately upon leaving the rails of defendant company, plaintiff advised the engineer in charge of the locomotive that he had never before been over the rails from that point on; inquired of the engineer if he had been over them and was advised by him that he was completely familiar with the rails, as he was the man who used to deliver their engines at Cahokia. He then told the engineer that he, the plaintiff, would have to rely upon him to show him the way from there on, and advise him as to the rules, signals, and location of switches.

As they proceeded along the G. M. & O. rails, the engineer indicated a switch that was necessary to be thrown, and plaintiff unlocked it, let the engine

through, threw the switch back, locked it, and climbed back on the deck of the locomotive on the right side or engineer's side, where he was at the time of the accident. At this time the locomotive was still several hundred feet outside the Cahokia plant. After they had proceeded something in excess of 150 feet they struck a derailer on the rails, causing the engine to be derailed and injuring plaintiff.

The undisputed evidence in the record is to the effect that for a distance of about one hundred feet before reaching the derailer, weeds had been permitted to grow up, so that one could hardly see any of the roadbed between the rails. Plaintiff testified that there was nothing visible to him on the rails at that point.

There is no question raised as to excessiveness of the verdict. It is conceded by defendant that plaintiff and defendant were both engaged in interstate commerce at the time of the injury and subject to the provisions of the Federal Employers' Liability Act.

It is argued on behalf of defendant that if the negligence which caused the derailment was an unforeseeable and transitory act of negligence in the operation of the locomotive, in failing to discover or throw the derailer, such negligence was that of either plaintiff or an employee of the Union Electric Company, for which plaintiff cannot recover from defendant. Counsel contend that there was no actionable negligence on the part of defendant, in connection with its duties regarding the furnishing of plaintiff with a safe place in which to work. It follows necessarily, they maintain, that the trial court erred in failing to grant defendant's motions to direct a verdict in favor of defendant.

It is conceded by defendant, and the evidence is undisputed that plaintiff was an employee of defendant at the time of the accident. The statute under which suit is brought provides in substance:

"Every common carrier by railroad while engaging in interstate commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed . . . or other equipment," 45 USCA Sec. 51. It is the duty of the master to furnish the servant with a reasonably safe place to work. This duty also applies to machinery and instrumentalities used by the servant in his work; and this duty follows the master even though the servant is sent upon the premises of another to do his work. This duty is nondelegable and affirmative, and must be continuously fulfilled and positively performed. 45 USCA Sec. 51; Shearman and Redfield on Negligence, Rev. Ed., Vol. 2, Secs. 193 *et seq.; Bailey v. Central Vermont Ry., Inc.*, 319 U. S. 350; *Cincinnati N. O. & T. P. Ry. Co. v. Hall*, 243 Fed. 76; *Coal & Coke Ry. Co. v. Deal*, 231 Fed. 604; *Panama R. Co. v. Minnix*, 282 Fed. 47; *Kansas City Southern Ry. Co. v. Nectaux*, 26 F. (2d) 317; *Albert Miller & Co. v. Wilkins*, 209 Fed. 582; *Illinois Terminal R. Co. v. Thompson*, 210 Ill. 226; *Cummins v. Sanitary Dist. of Chicago*, 185 Ill. App. 639; *East St. Louis Ice & Cold Storage Co. v. Crow*, 52 Ill. App. 573; *McBeath v. Rawle*, 93 Ill. App. 212; *Ohio & M. Ry. Co. v. Wangelin*, 43 Ill. App. 324; *Sprickerhoff v. Baltimore & O. R. Co.*, 323 Ill. App. 340; *Armstrong v. Chicago & W. I. R. Co.*, 350 Ill. 426.

There is no evidence that plaintiff ever agreed to a change of masters. There can be no question but what he still looked to defendant as his employer. The presumption arises therefore, that he continued to be the servant of the railroad. There is no way that the contract relationship of master and servant can be created without the consent and assent of both parties,

express or implied. That relationship, once established, is presumed to continue until there is evidence of change. *Costigan v. New York & S. Ry. Co.*, 160 App. Div. 597, 145 N. Y. S. 1029.

In a somewhat similar case, *Wegman v. Great Northern Ry. Co.*, 189 Minn. 325, 249 N. W. 422, defendant railroad company made a contract with the Northwestern Telephone Company for the use of the latter company of that portion of the rails of its interstate railway system between two stations in Minnesota for a motor car with trailer to be furnished by the Telephone Company for the transportation of its crews and supplies over defendant's tracks. For such use of defendant's rails it was to receive a certain stipulated sum per day. Defendant railroad agreed to furnish a ''conductor-pilot'' for the motor car. The Telephone Company was to pay for his services. It also agreed to observe and obey all rules, regulations and orders of the defendant railroad and its proper officers applicable to the exercise of the permission to use the rails.

It was further stipulated that the ''conductor-pilot'' should be regarded as employee of the Telephone Company, which agreed to indemnify the railroad for damages through personal injuries to employees or to property. On October 7, 1930 plaintiff was the conductor-pilot serving with the telephone crew. He was injured in a collision, resulting from the negligence of an employee of the Telephone Company, who was operating the motor car. There was a verdict and judgment in favor of plaintiff, which was affirmed by the Supreme Court of Minnesota. That court held that plaintiff was to be regarded as an employee of defendant, in spite of the contract, and was responsible to defendant. With reference to the question as to whether or not defendant could be charged with the negligence of the employee of the Telephone Company, the court held that where injury results from the

negligent operation of a railroad, whether by its owner or by another whom the owner authorizes or permits to use its tracks, both the railroad and the person or corporation permitted to use it were liable, jointly and severally, to respond in damages to the injured parties, and the negligence of the Telephone Company employee was held to be the negligence of defendant. The court further said that it was not necessary even to inquire whether the negligent employee was a servant of the railroad company.

The case most nearly in point with the case at bar is that of *Ryan v. Twin City Wholesale Grocer Co. and Minnesota Transfer Railway Co.*, 210 Minn. 21, 297 N. W. 705. In this case plaintiff, Ryan, was employed by the Minnesota Transfer Railway Company as a checker and trucker at its Charles street freight depot in St. Paul. Nearby the Grocer Company did business in a large building on University avenue. By agreement between the two concerns Ryan was sent to the place of business of the Grocer Company to check freight intended to be shipped over the railroad and also freight to be shipped by truck. The Grocer Company agreed to reimburse the railroad for Ryan's wages, social security tax and its contribution to the pension fund of railway employees. He was directed by his superiors to keep busy and do anything he was ordered to do when not engaged in checking. In obedience to this order, he was taking down some heavy sacks of sugar which had been negligently stacked up by the Grocer Company employees, when one fell on him and seriously injured him. Ryan brought suit against both the Grocer Company and the railroad. The Grocer Company was directed out and there was a verdict and judgment against the railroad, which appealed. In sustaining the judgment of the trial court, the Supreme Court of Minnesota held that for the purposes of the lawsuit the Railway Company would be liable for the consequences of any negligent

piling of the sacks of sugar by the employees of the grocery company in the same manner as if the piling had been done by the employees of the railway company in the ordinary course of its business. The court further held that the Grocer Company's building was the one place wherein defendant had directed plaintiff to do all of his work, hence its duty was to use ordinary care to see that it was a reasonably safe place for that purpose.

So in the instant case, defendant sent plaintiff to the place where he was injured, in the performance of the duties assigned to him. He had no control of the instrumentalities at the place where he was so injured. So far as the plaintiff was concerned the place where he worked and was injured was furnished him by defendant.

■ Whether or not permitting weeds to grow on the right of way, so that the derailer could not be seen, was negligence, under the facts and circumstances of this case, was a question for the jury. *Chicago, B. & Q. R. Co. v. Kelley,* 74 F. (2d) 80; *Chicago, St. P. M. & O. Ry. Co. v. Henkel,* 52 F. (2d) 213.

■ We are constrained to the opinion that the trial court did not err in refusing to direct a verdict.

■ It is alleged as error, that the court erred in permitting plaintiff, over objection of defendant to testify to the fact that he informed Wolfe (the engineer) that he had never been over the M. & O. tracks before. No authority is furnished the court as to why this would be incompetent, and no authority is furnished the court by plaintiff, as to its competency. However, practically the same evidence was elicited on cross-examination by counsel for defendant, and we hold this error, if it was an error, was cured. Error in the admission of evidence offered by one party is cured where practically the same evidence is afterwards introduced by the adverse party or elicited

on cross-examination. 4 C. J. 983. In any event we hold that this evidence was immaterial.

It is alleged that the court erred in refusing to give defendant's instruction number five, which was as follows; "The court instructs the jury that if you believe from the evidence that the injuries which the plaintiff received were occasioned to him through his sole negligence, then the plaintiff would not be entitled to recover and you should find the defendant not guilty."

The instruction so requested was not based upon any evidence on the trial of the case. An instruction not based upon some evidence in the case is improper and it would be error to give it. *New Ohio Washed Coal Co. v. Hindman,* 119 Ill. App. 287; *Peters v. Madigan,* 262 Ill. App. 417; *Elliott v. Atchison, T. & S. F. Ry. Co.,* 262 Ill. App. 466.

The same ruling is applicable to instruction number six, requested by the defendant and refused by the court, which is to the effect that if the injuries received by the plaintiff were occasioned to him through the acts of persons who were not the officers, agents, servants or employees of the defendant, then the plaintiff would not be entitled to recover.

Complaint is made of the prejudicial argument to the jury on the part of counsel for plaintiff. Timely objection was made by defendant, and we do not find the argument so prejudicial as not to be cured by the action of the court.

Finding no reversible error in the record judgment of the circuit court will be affirmed.

*Affirmed.*

CULBERTSON and BARTLEY, JJ., concur.