Ruth Pitrowski, Administrator of Estate of Edward Pitrowski, Deceased, Appellee, v. The New York, Chicago & St. Louis Railroad Company, Appellant.

Gen. No. 46,007.

Opinion filed December 15, 1953. Rehearing denied January 5, 1954. Released for publication January 5, 1954.

WINSTON, STRAWN, BLACK & TOWNER, of Chicago, for appellant; GEORGE B. CHRISTENSEN, DOUGLAS C. MOIR, and EDWARD J. WENDROW, all of Chicago, of counsel.

MARION J. HANNIGAN, and EDWARD G. BICEK, both of Chicago, for appellee.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff, Ruth Pitrowski, administrator of the estate of Edward Pitrowski, deceased, brought suit against The New York, Chicago & St. Louis Railroad Co., a corporation, under the Federal Employers' Lia-

bility Act (45 U. S. C. Secs. 51–59) to recover damages for the death of her husband, Edward Pitrowski. Edward Pitrowski at the time of his death was 42 years of age, was survived by his 31-year-old widow, and two children, aged 11 and 9 respectively. In 1950 his gross earnings amounted to $5,506.04. Verdict was returned in the sum of $150,000 and plaintiff, faced with the alternative of a new trial, remitted $50,000. From the $100,000 judgment then entered defendant appeals.

Defendant introduced no evidence in the case (other than a stipulation with which we are not here concerned), and stands upon its motion for a directed verdict.

Four acts of negligence charged in the complaint are before us: (1) that the defendant caused or allowed the freight car upon which plaintiff's intestate was riding as a switchman to become derailed; (2) that it moved the car at a dangerous and excessive rate of speed; (3) that it caused, permitted or allowed obstructions to be on the track; (4) that it failed to furnish plaintiff's intestate with a reasonably safe place to work. Defendant maintains that there was no evidence to support any of the allegations of negligence, and in order to determine the issue thus raised a review of the facts is necessitated.

Plaintiff's intestate, a switchman employed by defendant, was killed on October 15, 1951 while engaged in placing two box cars on an industry sidetrack located on property of the Bell Fibre Products Corporation in Chicago, Illinois. He was a member of a switching crew consisting of himself, the head brakeman, fireman, engineer and yard conductor. The working hours of the crew were between 12:00 midnight and 8:00 a. m., and the accident happened sometime around 3:30 a. m. Defendant railroad's main track runs approximately in a north and south direction at the general vicinity of the place of the accident. A switch track

branches off of defendant's westbound main track and continues in a northerly direction from a switch point which is termed the "entrance switch" in the testimony. On the Bell Fibre property, which is to the east of the defendant's tracks, the switch track branches into two tracks, one of which curves to the east while the one involved proceeds in a northerly direction parallel to the west wall of the plant. When the crew came to the entrance switch the caboose was cut off and left standing on the main line attended by the brakeman. Decedent threw the entrance switch, while the yard conductor, Fietze, walked to the plant switch and lined it for the track parallel to the building. It was a dark morning and there were no lights about these switch tracks. There were two cars on the movement with an engine pushing them through a space referred to as a "tunnel," made by the sides and overhang of the adjoining building. About 15 feet north of the north end of this tunnel the lead car became derailed. Plaintiff's intestate was riding at the head of this car and was controlling the movement. It was proceeding about 3 or 4 miles an hour at the time of the accident. Fietze was standing some distance to the south for the purpose of passing signals between decedent and the engineer, and, because of a slight curve beyond the switch, he stepped some 10 feet to the east in order to be able to give the signal. As Fietze was watching the cars his attention was attracted by a shadow "going against the wall." He yelled for the engineer to stop. The engineer did so, moving about 3 or 4 feet after he heard the shout. The front wheels of the lead car had become derailed and thrown against the side of the concrete wall adjacent to the track, and when Fietze walked to the head of the movement he saw decedent's dead body crushed between the lead car and the wall. Between the tracks were the broken remnants of a "dolly" which

66

had been used for 2 or 3 years before the accident by Bell Fibre Products Corporation for the movement of tools and material about its plant. This dolly was about 7 or 8 feet in length and was constructed of metal angle irons. It operated by means of flanged wheels on steel rails within the plant. It was made in the machine shop of the Bell plant. It extended 10 or 12 inches above the track level and at the time of the accident had no lights or any warning devices about it.

Before considering the particular charges of negligence charged in the complaint and argued by plaintiff to have been established, we shall have in mind certain basic legal principles governing this type of case.

■ The Federal Employers' Liability Act (Sec. 51) provides that a railroad carrier when engaged in interstate commerce shall be liable in damages to any employee for "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed . . . ." It is to be observed that negligence is the gist of the employee's right of action against the employer under the provisions of this Act. The Act does not make a railroad company an absolute insurer of the safety of the employee. *Wilkerson v. McCarthy,* 336 U. S. 53.

We now come to a consideration of the first allegation of negligence, namely, that defendant "caused, permitted or allowed the car to become derailed."

The accident here was caused by the fact that this back-up switching movement struck an unseen and unexpected obstacle which was negligently permitted by someone to remain upon the industry track in such a position as to constitute a menace to safety, particularly during the hours of darkness. That the railroad

67

company did not place the dolly upon the tracks is admitted. That it was not aware of the fact that the dolly was on the track is undisputed. The only remaining question under which recovery could be had under this allegation of the complaint is whether in the exercise of ordinary care the railroad company should have discovered the obstacle prior to the accident. This proposition also appears in a subsequent allegation and we shall discuss it in that connection.

█ The next charge is that the defendant moved the car at a dangerous and excessive rate of speed. The only evidence in the case upon the question of speed is that the movement was proceeding "slowly" or at a speed of 3 or 4 miles per hour. Obviously this is not *per se* an excessive rate of speed, and only becomes such if the railroad company knew or is charged with knowledge that a dangerous obstruction which would in all probability derail the movement was on the track in front of the moving car. If the railroad company had knowledge or is charged with knowledge of this fact (to be discussed later), then any motion at all on the part of its train would have been negligence. We must conclude, therefore, under all the testimony in this case, that the speed was not *per se* the proximate cause of this accident.

The third charge of negligence is that the railroad company caused, permitted or allowed obstructions to be on the track, and the fourth charge is that defendant failed to furnish plaintiff's intestate with a reasonably safe place to work. Inasmuch as these two charges of negligence are tied together and constitute in our opinion the basis upon which negligence, if any, must rest, we shall treat them as a single point.

The issue of negligence thus resolves into a single question: Should the railroad company in the exercise of reasonable care have known that the dangerous ob-

stacle was on the track before and at the time of the collision?

Conductor-switchman Fietze was the only member of the railroad company crew who testified, and he said that he had never seen the dolly before the night of the accident. The track foreman, Baker, whose duties consisted of inspection and maintenance of the tracks, said that he had seen the dolly being used on the track in the daytime before the accident, that he never saw it on the track when it was not being used, that "when it wasn't being used I saw it turned off near the track back far enough to clear the track and the walkway." There was no proof that any employee of the railroad company had ever seen the dolly resting in a place where it would constitute a threat to the safety of defendant's employee. Neither is there any evidence as to when the dolly was placed on the track, who placed it there, or how long it remained there before the accident.

The question is raised as to whether the obstacle should have been discovered on the night in question or by an earlier inspection. The evidence shows that the only employee of the company who was in a position to have seen the obstacle immediately before and at the moment of the impact was plaintiff's intestate, who was riding the front car as it moved down the track, and who was in charge of the movement. No contention is made that there was any contributory negligence in the failure of this employee to discern this obstruction on the track.

██ Plaintiff argues, however, that a proper earlier inspection by a section foreman whose duties required him to patrol that stretch of the tracks would have disclosed the dangerous condition. Plaintiff introduced in evidence certain rules of the defendant relating to track foremen, to the effect that they "will be held re-

sponsible for the proper and economical maintenance of the track roadway . . . . They must make frequent inspections of the section assigned to them, and know that it is in safe and proper condition." There is no proof that the section foreman did not comply with his duties in respect to this rule. The evidence showed that he made weekly inspections by walking over the track looking for objects that might foul the track. It does not follow that merely because a dangerous object was on the track at the time the accident happened that a presumption of negligence of inspection follows. In the first place it would be a burden not compatible with the practical operation of the railroad to require that each switching movement be preceded by a track walker. The most that could be required in the exercise of ordinary care, taking into consideration practical operation of the railroad, is that an inspection be made at reasonable times and places, the frequency depending upon varying circumstances. Furthermore, it would impose an unreasonable burden on the defendant to be required to search about this idle plant at night in order to ascertain the existence of a dangerous obstacle which it had no reason to anticipate. We emphasize that there was no evidence whatsoever that the condition described as causing this derailment had ever before existed; the evidence is to the contrary.

██ It is also suggested in plaintiff's brief that a presumption of negligence arose from the fact that the place where the accident occurred was unlighted. There is certainly no requirement that an industrial yard be lighted each time a switching movement occurs. While it is true that if the entire yard had been lighted the accident might not have occurred, this is not the test of negligence which is to be applied. The test is, rather, whether the defendant in the exercise of ordinary care should reasonably have foreseen the likeli-

70

hood of an injury which lighting might have disclosed. The argument falls back upon the basic question as to whether or not the railroad had notice of the dangerous condition which existed at the time and place of the accident. If it did, then of course, in the exercise of ordinary care it should have disclosed the presence of this dangerous object by illumination or some other means. But in the absence of any such knowledge before the accident, it was required to use only ordinary and careful precautions, taking into consideration the nature of the duties upon which its employee was engaged.

█ We have carefully examined the record as to alleged negligence on the part of the conductor Fietze, and we find no evidence of any negligence on his part which contributed to the accident. The contention is made that after being derailed the car scraped against the wall for 25 or 30 feet. There is no such testimony in the record, but the argument is apparently predicated upon counsel's interpretation of a photograph. We do not believe that the photograph supports counsel's position, but even though it does the undisputed testimony is that immediately upon Fietze's discerning a shadow on the wall, arousing suspicion that something was wrong, he signalled the engineer to stop and the stop was made with reasonable promptness.

█ It is also argued that Bell Fibre's use of the dolly on defendant's tracks was wrongful and that the defendant should have interfered. The evidence indicates that prior to the time of the accident there was no wrongful use of the dolly of which defendant company had or should be charged with notice.

There are three decisions bearing strong analogy and emphasizing principles which we consider controlling.

71

The first is the case of *Wetherbee v. E. J. & E. Ry. Co.*, 191 F.2d 302 (7 Cir., 1951). In that case a boxcar was pushed by an engine into an industrial yard to make a coupling onto another standing car. Upon a signal from switchman Venske the movement backed up until a switch beside which plaintiff was standing was passed. Plaintiff then threw this switch and gave the signal for the movement to proceed. Plaintiff then mounted the front end of the lead car on the engineer's side and held on to a grab iron. In the meantime Venske started walking toward a road crossing in order to protect this crossing from the back-up movement. Wetherbee, after Venske's departure, was in charge of the movement, and the car on which he was riding ran onto a piece of wood about 61 inches in length which had been left alongside and inside the west rail of the track. The wheels following this piece of wood became derailed, and Wetherbee, crushed between a concrete loading dock and the boxcar upon which he was riding, was killed. Plaintiff contended, as is contended here, that it was the duty of the railroad company to furnish its employees a reasonably safe place to work, that the duty was nondelegable and follows the servant when working for the railroad on the premises of another, that the railroad must accept responsibility for the presence of the offending plank. In denying this contention the court of appeals said, at page 306:

"Supporting its contention that defendant did not furnish Wetherbee with a safe place to work, plaintiff relies on such cases as Porter v. Terminal Ry. Ass'n of St. Louis, 327 Ill. App. 645, 65 N. E. 2d 31; Terminal R. Ass'n of St. Louis v. Fitzjohn, 8 Cir., 165 F. 2d 473; Grand Trunk Western R. Co. v. Boylen, 7 Cir., 81 F. 2d 91; and Divine v. Delano, 272 Ill. 166, 111 N. E. 742. But these cases involved accidents where permanent

72

structures had been erected allowing insufficient clearance, or where objects had long been permitted, with the knowledge of the railroad company, to remain on or near the tracks, thereby presenting a fact situation distinguishable from the case at bar. Here the board was a *new* threat to safety, not something about which the railroad itself had previous knowledge, even though boards had on some previous occasions been found on or near tracks in the Ruberoid plant."

■■ In the case of *Kaminski v. Chicago River & Indiana R. Co.*, 200 F.2d 1 (7th Cir., 1952), plaintiff was employed by defendant as a conductor in charge of a switching engine and crew in Chicago, Illinois. While proceeding ahead of a back-up movement on an industry track inside the company premises about 3:00 a. m. plaintiff suddenly fell through a hole and landed in the space below ground level which had previously been used by the industry as a coal pit. The violation of the Federal Employers' Liability Act charged defendant with failure to exercise reasonable care to give plaintiff a reasonably safe place to work. The court said at page 4:

"Before defendant can be charged with negligence in failing to remedy the condition which caused plaintiff's injury, or failed (sic) to warn plaintiff of the existence of such a condition, it is necessary to establish that the defendant had actual knowledge of the condition, or, in the exercise of ordinary care, should have known of its existence. The record in this case clearly establishes that such circumstances did not exist here. The only inference that can reasonably be drawn from this record is that the condition which caused the accident had been created within a short time before plaintiff's injury. It may have been a matter of minutes or of hours, hence defendant cannot on this record be charged with constructive knowledge of the condition."

In this latter case is cited the case of *Small v. Ralston-Purina Co.* (Mo. App.), 202 S.W.2d 533, where an employee of the railroad was injured while at work inside the plant of the Ralston Company. He stepped on a plank while inspecting railroad cars. The plank, resting on a pebble, moved under plaintiff's weight, causing plaintiff to fall. In holding that a verdict should have been directed, the court said (p. 537):

"There is no evidence whatever in this case as to who placed the board alongside the railroad track; there is certainly no proof whatever that Terminal or any of its employees placed the board where it was found, or knew that it was there. . . . There is no proof as to whether the board had been there one minute, one hour or one day. The law is established that in order to require an employer to warn and instruct the employee, the danger must be one known to the employer and unknown to the employee. In no event was there any liability established on the part of Terminal for failure to provide its servant with a safe place to work, or failure to warn him of an unsafe condition, and hence its motion for a directed verdict should have been sustained."

In *Kloetzer v. Louisville & N. R. Co.*, 341 Ill. App. 478 (leave to appeal denied, see 346 Ill. App. xiii), plaintiff was a railroad inspector checking defendant's trains at a station in East St. Louis. While working on a baggage car on defendant's eastbound train, a Baltimore and Ohio train pulled into the station on the other side of a concrete platform, struck a hand truck belonging to the Railway Express Agency, causing the truck to be driven across the platform and striking plaintiff. Plaintiff contended that defendant violated its obligation to provide him with a safe place to work. In holding to the contrary, the court said (pp. 485–487):

"Under the Federal Employers' Liability Act, a railroad company is not subject to absolute liability to its employees, but liability under the Act must arise from negligence on part of the employer based upon substantial evidence in the record . . . .

"We have given careful consideration to the evidence in the record and upon reviewing such evidence we are unable to discover any substantial evidence that the defendant, Louisville & Nashville Railroad Company was guilty of negligence charged . . . .

"The complaint charges that a certain express truck was wrongfully permitted to remain near the track. There was no evidence to show how long this express truck had remained at the track, nor how it got there. While evidence on this particular subject in the record . . . might have tended to establish negligence as to the express agency, or the Baltimore & Ohio Railroad, . . . such evidence does not establish negligence as to the defendant in this cause.

". . . To indulge in speculation, that if the area had been brightly lighted, the Railway Express Agency's agent or other agent who permitted the hand truck to remain on the platform, or the Baltimore & Ohio Railroad engineer would have been more careful and not negligent, as a basis for establishing negligence on the part of the Louisville & Nashville Railroad Company would indeed be going far afield."

Each of the foregoing cases presents facts strongly analogous to those in the instant case and states the principles of law which must govern here.

Plaintiff cites the cases of *Devine v. Delano,* 272 Ill. 166, *Porter v. Terminal R. Ass'n of St. Louis,* 327 Ill. App. 645, and *Grand Trunk Western R. Co. v. Boylen,* 81 F.2d 91, in support of her contention that decedent here was not afforded a safe place to work. These decisions were relied upon by the plaintiff in the

75

*Wetherbee* case above and were distinguished on the grounds that they involved accidents where permanent structures had been erected allowing insufficient clearance or where objects had long been permitted with the knowledge of the railroad company to remain on or near the tracks, thus presenting fact situations distinguishable from the case at bar. We think this distinction sound and that it is applicable here.

 Plaintiff relies upon *Williams v. Atlantic Coast Line R. Co.* (5 Cir.), 190 F.2d 744, where there is strong language to the effect that "the employer must make proper tests and inspections to discover dangers in the place where the employees must work, and after ascertaining their existence must take reasonable precautions for the safety of the employees." We recognize this to be a sound principle of law. However, the facts in that case indicated that the employee in question was engaged with a crew in shoring up a washed out track in a Georgia swamp. He was required by his foreman to enter into water at or near a point where it was 7 or 8 feet deep, without a life preserver or other life-saving equipment, as a result of which he drowned. The bare statement of these facts is sufficient to distinguish it from the instant case. In *Boston & M. R. R. v. Meech* (1 Cir.), 156 F.2d 109, the court cited the same general principles with reference to the precautions which an employer must take. However in this latter case the employee was working on a narrow platform removing small tools from incoming locomotives. A hostler backed an engine in past this platform and was in such a position that he could not see the plaintiff, as a result of which the latter, working on another locomotive, was struck. It further appeared that the locomotive approached without whistle or other warning. In *Murphy v. Lehigh Valley R. Co.* (2 Cir.), 158 F.2d 481, the plaintiff was injured as

76

a result of an engineer's violating the rule of the company against proceeding when the employee's signal could not be seen, as a result of which the employee was crushed between the locomotive and a gate enclosing an industry yard.

All of these cases are plainly distinguishable upon the facts, in each case the employer having clearly violated a duty owed the employee or requiring him to work in a place which the employer knew or could in the exercise of ordinary care have known was unsafe.

█ Inasmuch as we are of the opinion that defendant's motion for a directed verdict should have been allowed for the reasons here stated, it is unnecessary to consider further assignments of error.

Accordingly the judgment of the circuit court of Cook county is reversed.

*Judgment reversed.*

SCHWARTZ, P. J. and ROBSON, J., concur.